FILED
United States Court of Appeals
Tenth Circuit

November 24, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID SANDOVAL,

      Petitioner - Appellant,

v.

ROBERT ULIBARRI, Warden, Southern
NM Correctional Facility,

      Respondent - Appellee.

No. 07-2082

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. Civ. 6:05-CV-1252 MV/ACT)**

Brian A. Pori, Albuquerque, New Mexico, for the Petitioner - Appellant.

Steven S. Suttle, Special Counsel, Albuquerque, New Mexico, (Gary K. King, Attorney
General of New Mexico, with him on the brief), for the Respondents - Appellees.

Before **LUCERO, HOLLOWAY** and **McCONNELL**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

**I**

    This appeal is from the district court's denial of a state prisoner's petition for habeas

corpus relief brought under 28 U.S.C. § 2254.  The district court granted a certificate of

appealability on three issues.  Appellant Sandoval raises as a fourth issue the denial of an

evidentiary hearing in the federal district court. We have jurisdiction under 28 U.S.C. §§ 1291 & 2253(c).

Mr. Sandoval challenges in these proceedings his conviction in New Mexico state court on charges of aggravated battery and shooting at a motor vehicle, two of the four charges he had faced at trial.[1] The appellate court affirmed the convictions on those two counts, and the Supreme Court of New Mexico denied review. Mr. Sandoval then brought further proceedings in the trial court. First he filed a pro se application for writ of habeas corpus, followed by a second application brought with the assistance of counsel. In each of those proceedings, the trial judge denied relief and the Supreme Court of New Mexico denied a petition for certiorari.

Mr. Sandoval then filed his petition under section 2254 in the federal district court, assisted by counsel. The case was assigned to a magistrate judge for report and recommendation. The magistrate judge issued a carefully considered report and recommended that the district judge deny relief. The district judge adopted the report and recommendation and dismissed the petition. As noted, the judge later granted a certificate of appealability.

**II**

The following summary of the trial evidence is taken from the opinion of the Court of Appeals of New Mexico. We note at the outset that no trial transcript has been provided

---

[1]The jury had acquitted Mr. Sandoval of one count of aggravated assault. He had been convicted at the same trial on a third charge, tampering with evidence, but that conviction was reversed on direct appeal to the Court of Appeals of New Mexico.

for our review, nor was one provided for the benefit of the federal district court as best we can discern. Under Rule 5(c), Rules Governing Section 2254 Cases, the state should have included in its answer information regarding the availability of transcripts or tapes of the state trial and other proceedings. This apparently was not done, but Mr. Sandoval does not appear to have raised any issue about the sufficiency of the record in the federal district court, nor does he on appeal.[2]

The victim of the aggravated battery, a man named Parra, had an ongoing feud of sorts with the Sandoval family. The origin of the feud was the alleged rape of appellant's daughter by Parra. That alleged offense was not prosecuted. But Parra and appellant's son, David Sandoval, Jr., had a "history of fighting" as a result.

On Easter Sunday evening in 2000, Parra and a companion, Bruhn, were driving in appellant's neighborhood. About a block from appellant's house, they encountered Sandoval, Jr., and his 13 year-old cousin, Daniel Jimenez. A quarrel ensued and soon moved to the front of appellant's house, at which point Daniel Jimenez ran inside and announced that Parra and Bruhn were outside. When Mr. Sandoval saw Parra's car, he ran upstairs and got his wife's rifle. Mr. Sandoval testified at trial that Parra had repeatedly threatened the Sandoval family, and that he consequently believed that Parra had come to kill his family.

---

[2]In appropriate circumstances, federal courts have several times disapproved of using state appellate court summaries of the evidence in lieu of the actual record. *See* 1 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice & Procedure* § 19.2 at 850 n.10 (5th ed. 2005) (collecting cases). But when, as here, the petitioner has acquiesced in the practice and the state has not been shown to have acted improperly, the practice has been held acceptable. *See Baker v. Estelle*, 711 F.2d 44, 46 (5th Cir. 1983).

Mr. Sandoval admitted, however, that at first he had not seen any weapon in Parra's hands.

From this point forward in the chronology, the testimony at trial was sharply conflicting. Defense witnesses – including Daniel Jiminez, appellant himself, appellant's son, and at least one other relative – testified that Parra went back to his car and emerged brandishing a gun and advancing on appellant's son. When appellant saw Parra with a gun, he tried to shoot him, but the rifle's safety was still on. As he released the safety lock, he testified, he saw Parra look up at him and taunt him with an obscenity. Appellant also testified that he heard his son yell, "No, Dad, no!" By this time, Mr. Sandoval had emerged from a second-floor window to the balcony. Parra and Bruhn turned to run, but Mr. Sandoval started shooting, hitting Parra. Parra fell to the ground but then got back up and made it to his car.

Appellant testified that he then decided to shoot at the car to disable it, so that Parra would not be able to dispose of his weapon before police came. He said that as he resumed firing, the smell of the gunpowder and the shouting caused a flashback in which he believed that he was back in Vietnam fighting against the Viet Cong. He kept firing until his clip was empty, but he testified that he had no recollection of that.

The prosecution's evidence was that Parra and Bruhn were unarmed and only verbally quarreling with appellant's son when appellant started shooting. Bruhn was able to avoid getting hit by getting behind a car. Parra was hit three times – once in the back and then, after he got into the car and was trying to get away, he was hit once in the hand and once in the knee. Several other bullets went into the car, shattering windows and blowing out two

tires. In spite of that, Parra and Bruhn were able to leave the scene in the car.

Within two to four minutes, the victim's car was stopped by a police officer as Bruhn tried to take Parra to a hospital. There was disputed evidence from different police officers about whether the route they were on was the shortest route to the nearest hospital. No weapon was found in the car when they were stopped, nor was any weapon that Parra might have had ever recovered.

When officers arrived at the Sandoval home, Mr. Sandoval quickly admitted the shooting. He said that he had shot Parra for harassing his family. At that time he apparently did not say that Parra had been carrying a gun, nor did other witnesses report that at the scene, although several later testified to that effect.

### III

### A

We have noted that Mr. Sandoval was convicted at trial on three counts (with conviction of one count having been reversed on direct appeal) and acquitted on a fourth. We will briefly note other developments at trial that are significant as context for this appeal. The victim, Mr. Parra, did not appear at trial. The prosecution moved for admission in evidence of Parra's testimony from the preliminary hearing, informing the court that it had tried for a period of one year to locate Mr. Parra to secure his attendance at trial, but had been unsuccessful. Counsel for Mr. Sandoval told the judge that it was essential to the defense to

have the opportunity to cross-examine Mr. Parra in front of the jury.[3] The prosecution then summarized the efforts it had made to locate Mr. Parra and informed the court and defense counsel that it was prepared to present testimony to establish the extent of those efforts. At this point, defense counsel decided to stipulate that the state had made adequate efforts to locate Parra for appearance at trial. This stipulation cleared the way for Parra's testimony from the preliminary hearing to be admitted at trial under an exception to the hearsay rule.

The attorney who represented Mr. Sandoval at trial and who stipulated to the admission of Parra's testimony from the preliminary hearing was the second attorney to represent Mr. Sandoval in the trial court. The cross-examination of Parra at Sandoval's preliminary hearing had been conducted by Mr. Sandoval's first appointed attorney. That lawyer later was replaced by a second court-appointed attorney after he failed to maintain contact with Mr. Sandoval and could not be located by the state. He was later disbarred and was revealed to have had a substance abuse problem.

Appellant Sandoval testified in his own defense at trial, and his attorney called several other witnesses who had been present at the scene of the shooting. The defense also called a psychotherapist, Dr. Evelyn Sandeen, who had treated Mr. Sandoval for post-traumatic stress disorder. The defense lawyer had failed, however, to give advance notice of the proposed expert testimony as required under New Mexico court rules. Consequently, the trial judge limited Dr. Sandeen's testimony to the general nature of post-traumatic stress

---

[3]Again, we take the facts from the opinion of the New Mexico Court of Appeals, having no recording or transcript of the trial proceedings for our use.

disorder and did not permit her to testify that Mr. Sandoval had been diagnosed with the disorder, had been treated for it, and had been rated disabled by the Veterans Administration based on this condition.  Nor was Dr. Sandeen allowed to give her opinion that Mr. Sandoval did experience symptoms of the disorder at the time of the incident in question.[4]

**B**

On direct appeal, the New Mexico Court of Appeals addressed two of the issues that are now before this court.  The appellate court held that the trial court had not abused its discretion in admitting Mr. Parra's testimony from the preliminary hearing in view of defense counsel's stipulation that the State had made a reasonable effort to locate Parra and have him appear at trial.  The appellate court rejected Sandoval's contention that his defense had been prejudiced by the lack of an opportunity to cross-examine Parra about medical tests that showed the presence of alcohol in his bloodstream after the shooting.  The court found that Sandoval had failed to show that he had preserved that issue for review.

**C**

The state court trial judge was also the judge who reviewed and rejected Mr. Sandoval's two applications for habeas relief from the state courts.  As noted, the New Mexico Supreme Court denied certiorari review each time.  The only substantive ruling from the state court habeas proceeding is a two-page order issued by the state trial judge in

---

[4]Facts recited in this paragraph of the text are from Sandoval's brief on appeal, which the state did not contest in its brief.  There is one exception: Sandoval submitted a letter from Sandeen which summarized testimony she could have given at the trial had it been allowed.

denying Sandoval's second petition (on which he was represented by current counsel). The ruling is so succinct that we re-produce it here almost in its entirety. The state habeas judge held:

> 1. The factual assertions [sic] contained in the petition and including [sic] supplemental affidavits are inconsistent with evidence introduced at trial and in each instance are not necessarily probative of the defense theories advanced by Petitioner or are merely cumulative to evidence heard and reviewed by the trier of fact herein.
>
> 2. The hypothesis of self defense or defense of others propounded by Petitioner herein, is inconsistent with the Petitioners [sic] own testimony at trial and is self contradictory [sic] with the post traumatic stress syndrome defense now asserted.
>
> 3. Petitioner herein has utilized four different attorneys, all having scrutinized the performance and competence of his [sic] predecessor based upon inconsistent theories of defense or justifications for the acts of Petitioner which are not in dispute.
>
> 4. All of the factual, procedural and ancillary questions now raised by the Petitioner were available to Petitioner prior to direct appeal herein and in fact were presented as the basis therefore [sic].
>
> The Court concludes Petitioner has not stated a legal claim for relief and further, that the record herein conclusively evidences that Petitioner is not entitled to the relief sought[;] this matter is therefore dismissed.

Aplt. App. 178-79.

## IV

### A

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a federal court may not issue a writ of habeas corpus with respect to any claim adjudicated on the merits in state court unless that adjudication:

(1) . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

As to the "unreasonable application" standard, we have held that:

only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254. In our view, a decision is "objectively unreasonable" when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law. It is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision. . . . [T]he state court decision must be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable.

*Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 1819 (2007).

Finally, as a more general matter, this court has held that deference to a state court decision on the merits of a federal claim is appropriate even when the state court does not expressly articulate a rationale for its decision.

[W]e must uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented. This "independent review" should be distinguished from a full de novo review of the petitioner's claims. Our review is in fact deferential because we cannot grant relief unless the state court's result is legally or factually unreasonable.

*Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999). Also, a state court adjudicates the merits of a federal claim for purposes of AEDPA deference even if it decides the claim without citing the controlling Supreme Court precedent. *Harris v. Poppell*, 411 F.3d 1189,

1195 (10th Cir. 2005).

## B

Sandoval asserts that he was denied the effective assistance of counsel at trial, raising several allegations of deficient performance by his lawyer. He argues that counsel failed to conduct a reasonable investigation, failed to interview several potentially helpful witnesses, and failed to consult and adequately prepare the psychologist, Dr. Sandeen, who did testify. Sandoval contends that he is entitled to relief under *Strickland v. Washington*, 466 U.S. 668 (1984), and that the state court's denial of his claim of ineffective assistance of counsel was contrary to or an unreasonable application of that well-established precedent.

Under *Strickland*, Mr. Sandoval must show that counsel's performance fell below an objective standard of reasonableness as measured against prevailing professional norms, and he must show that there is a reasonable probability that the outcome would have been different but for counsel's inadequate performance. 466 U.S. at 688, 694. Establishing a reasonable probability of a different outcome requires something less than a showing "that counsel's deficient conduct more likely than not altered the outcome in the case." *Id*. at 693. Instead, a reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Sandoval's first allegation is that counsel failed to conduct an adequate investigation. That the duty to provide effective assistance includes the duty to conduct an investigation that is reasonable under the circumstances of the case is clearly established law, being the specific claim raised in *Strickland* itself. As for the circumstances of this case, Sandoval

contends that his attorney "performed virtually no independent defense investigation of the charges in this case and did not prepare adequately to present Mr. Sandoval's only potential, meritorious defense." Applicant-Appellant's Brief in Chief at 19. Sandoval goes on to say that counsel apparently "did little more than review the discovery provided by the prosecution and then appear in court at Mr. Sandoval's side." *Id.*

More specifically, Sandoval alleges that counsel failed to investigate and present evidence of his fear of Parra and Bruhn based on their previous threats against his family; failed to conduct any pretrial interviews with the prosecution witnesses; did not review Mr. Parra's medical records before the trial; and did not even interview defense witnesses until the night before their testimony. We note, however, that several defense witnesses testified that Parra had been armed and threatening Sandoval's son. Probably the impact of this evidence was undercut by the fact that none of the witnesses, not even Sandoval himself, told the police immediately after the incident that Parra had been armed.[5] The state court's conclusion that more, essentially cumulative, evidence on this point would not likely have affected the outcome easily passes muster under AEDPA's standard; the conclusion is not unreasonable under the circumstances.

For reasons discussed further below, we do not think that the medical evidence pertaining to Parra had the potential to affect the outcome of the trial as Sandoval claims.

---

[5]Also, the fact that Sandoval's son yelled out to him, "No, Dad, no," or "No, Dad, don't shoot" (the record includes references to both versions), may have weighed in the minds of the jurors as evidence that the victim was not directly threatening Sandoval's son at the time Sandoval began shooting.

Most importantly as to this point, the assertion that the nature of the wound to Parra's hand could support an inference that he was gripping something hard at the time his hand was hit, even if accepted, falls far short of proving that the object may have been a pistol. It is mere conjecture that this evidence would have had persuasive force in supporting the claim that the victim was armed. Because the jury evidently disbelieved four or more witnesses who testified that Parra had been armed (perhaps because, as just noted, none of the witnesses so stated during the initial investigation), counsel's failure to investigate Parra's medical records and his resulting inability to use this evidence seems highly unlikely to have had any effect on the jury's findings.

## C

Mr. Sandoval contends that his trial counsel's failure to timely identify Dr. Sandeen as an expert witness resulted in the trial judge's limiting her testimony to general comments about post-traumatic stress disorder and excluding any testimony from her about her examination and treatment of Mr. Sandoval and her opinions regarding Mr. Sandoval. The state does not dispute the factual basis for this claim. We have no hesitation in saying that the trial lawyer's performance on this specific task fell below the standard of objective reasonableness. The issue, then, is whether this deficiency in counsel's performance caused prejudice to Sandoval's defense.

First, we must consider Sandoval's proffer as to the testimony Dr. Sandeen might have given had counsel properly given notice that she would be testifying as an expert. In support of his petition for habeas relief (both in state court and in the federal district court)

Sandoval offered a letter from Dr. Sandeen that briefly set out her views. Aplt. App. 134-45. We note as a preliminary matter that the state did not object to the form of this proffer or at least does not do so on appeal.

In her letter, Dr. Sandeen said that she first met Mr. Sandoval shortly after the incident and had known him for several years as a psychotherapy patient. (Dr. Sandeen's letter is dated about four years after the incident.) Dr. Sandeen refers to Mr. Sandoval's "severe[,] combat-related Post-Traumatic Stress Disorder" in the letter. Dr. Sandeen states that she believes, based on Sandoval's account of the incident, that he really did feel that he and his family were threatened and that he shot Parra for that reason. Then Dr. Sandeen says that "much has been made in this case of the fact that the young man was also shot in the back." She responds to this by opining that

> Mr. Sandoval, when faced with the extreme stress of being threatened as well as the visual and olfactory cues of handling and smelling a weapon being fired, had a flashback to his Vietnam combat experiences. At that point, he was no longer in contact with reality and did fire upon the young man's back, seeing him as an enemy combatant.

Dr. Sandeen's letter makes no reference to Mr. Sandoval's own testimony at trial.

In addressing the issue, we must first determine if the state court ruled on this claim. We conclude that it did. The order issued by the trial judge on his later consideration of Sandoval's second state petition for collateral relief (in which he was represented by counsel) was, as previously noted, quite terse. The order does not specifically mention Dr. Sandeen or even expert testimony. But it does refer to the factual assertions in the petition and accompanying affidavits generally. As to those factual matters, the judge said they were

"inconsistent with evidence introduced at trial" and either "not necessarily probative of the defense theories advanced" or "merely cumulative" to evidence produced at trial. In another part of the order the judge referred to criticism of Sandoval's previous attorneys, a rather obvious reference to the claim of ineffective assistance of counsel. There again the state judge referred to "inconsistent theories of defense or justifications" for Sandoval's acts.

We conclude that the state judge decided this aspect of Sandoval's ineffective assistance claim on the merits. We note that Sandoval has not contended otherwise. Although the state court's conclusions were stated starkly, they are not impervious to analysis. "[W]e owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999) (emphasis in original). We therefore will examine the state court's conclusions with the deference required under AEDPA.

On this point we cannot improve on the sound reasoning of the federal magistrate judge who painstakingly examined the issue. That analysis focused on the discrepancies between Dr. Sandeen's opinion and Mr. Sandoval's own description of the incident in his trial testimony. As the magistrate judge pointed out, Mr. Sandoval did not testify that he experienced a "flashback" to Vietnam before he began shooting at Mr. Parra. Nor did he testify that the flashback began before he started shooting at Parra's car. He testified that he believed that Parra and his companion meant to do him and his family harm and that he fired on Parra for that reason. He had fired at least three times before he began shooting at the car. He testified that the "flashback" to Vietnam did not begin until he had begun firing at the

automobile, which he did hoping to prevent Parra and his companion from leaving the scene and disposing of the weapon Parra had brandished. At that point, he testified, the flashback began and he emptied the rifle's clip. As far as our record reveals, Mr. Sandoval never testified that he perceived Parra to be an enemy soldier in Vietnam.

As the magistrate judge concluded, the discrepancies between Sandoval's account and Dr. Sandeen's account held the potential to confuse and distract the jury about Sandoval's decisions, his state of mind, and his actions as he was shooting. Because of the discrepancies, there is not a reasonable probability that Dr. Sandeen's testimony would have led to a different verdict. The state court's conclusion that Sandoval's defense was not prejudiced by the limitation of Dr. Sandeen's testimony is a reasonable one.

**D**

Sandoval claims that his Sixth Amendment Confrontation Clause rights were infringed by the admission in evidence of the preliminary hearing testimony of Mr. Parra. The state points out that in the federal district court Mr. Sandoval based an ineffective assistance of counsel claim on the same facts and did not directly contend that he had suffered a Confrontation Clause violation. Sandoval had alleged in his federal habeas petition that counsel had performed inadequately in stipulating to the reasonableness of the state's efforts to locate Parra and serve him with a trial subpoena, a stipulation that led to the decision to admit his prior testimony. Although Sandoval's brief focuses on the argument that his right of confrontation was infringed, it also includes assertions that point toward an ineffective assistance claim on these facts. Out of an abundance of caution, we will review

the claim both as a direct claim of violation of the constitutional right of confrontation and as another basis for a claim of ineffective assistance of counsel.

On appeal, Mr. Sandoval cites the fundamental importance of the right of confrontation and the interests it safeguards. But it is well established that prior testimony may be used against an accused in a criminal trial where the accused had the opportunity to cross-examine the witness at the earlier proceeding and the state has shown that the witness was unavailable for trial. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004) ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.").

On direct appeal, the New Mexico Court of Appeals held that the trial judge had not abused his discretion in admitting the testimony because Sandoval's counsel had stipulated to the reasonableness of the state's efforts to serve Parra, the only predicate for admission of the testimony that had been challenged. Although the state court did not mention the doctrine of invited error, its holding seems clearly to be an application of that principle. The Confrontation Clause claim was thus waived (not forfeited[6]) in the state court. We do not "consider issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir.

---

[6]*See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.") (internal quotation marks omitted).

1998).  Here, Sandoval does not address the procedural bar directly and has not presented any argument – except ineffective assistance of counsel – addressing the cause and prejudice requirements to overcome the effect of waiver.  *See Brown v. Sirmons*, 515 F.3d 1072, 1092-93 (10th Cir.), *cert. denied*, __ U.S. __ (2008).[7]  Thus, taken on its face as a claim of denial of the right of confrontation, this claim cannot even be considered because it was waived in state court.  We turn, then, to consider whether the waiver – trial counsel's stipulation that the state's effort to locate Parra was diligent – was itself an instance of ineffective assistance of counsel that could be the basis for federal habeas relief.

Taken as a claim of ineffective assistance of counsel, Sandoval's allegations about the admission at trial of Parra's previous testimony from the preliminary hearing has two main branches – the first contending that the cross-examination of Parra at the preliminary hearing was lacking, and the second challenging whether Mr. Parra was truly unavailable for the trial. As to the adequacy of the cross-examination, Sandoval's criticism is mostly speculative. Because of the problems that later developed with the performance of his first attorney, he suggests that the attorney may have been under the influence of controlled substances at the time of the preliminary hearing.  But no evidence is cited to support this suggestion.

Sandoval also makes two more specific contentions about the extent of the first attorney's cross-examination of Parra at the preliminary hearing.  The first assertion is that Parra was not confronted about the presence of alcohol in his blood when he was treated at

---

[7]Another exception to the exhaustion requirement is recognized for a fundamental miscarriage of justice, *see id.*, but Sandoval does not invoke this exception.

the emergency room immediately after the incident.[8] The attorney had failed to obtain the medical records before the hearing and was unaware of this medical finding. The second assertion is that the cross-examination at the preliminary hearing did not confront Mr. Parra with evidence that he had threatened the Sandoval family repeatedly prior to the incident.

The probative value of the evidence of alcohol in Parra's blood is unclear. The medical report in our record does not quantify the finding but merely notes that the ETOH (alcohol) level was "elevated." On this thin basis, we cannot say that Sandoval's defense was prejudiced by the failure to discover and use this evidence. The critical issue at trial was whether Sandoval's admitted acts were lawful as a response to an immediate threat to his son, which seems to have been substantially a matter of whether the jurors believed the four defense witnesses who said that Parra was brandishing a firearm or the testimony of Parra and his companion who said that he was not. The additional factor that Parra had some unknown amount of alcohol in his system at the time, while of some relevance to that issue, does not appear to have had the potential to substantially affect the jury's decision. As far as the evidence reveals, Parra may have had enough to drink the night before that some traces of alcohol were still detectable.

Sandoval also contends that the failure of his first attorney to confront Parra on cross-examination about his past threats to the Sandoval family constituted ineffective assistance. Sandoval and other family members testified at trial that they felt threatened. The state

---

[8]This argument is related to the argument discussed in part IV-E, *infra*, that the prosecution withheld evidence. The medical report revealing that Parra had alcohol in his blood was not produced until trial.

court's conclusion that further testimony would have been merely cumulative and so that Sandoval had failed to show prejudice was not unreasonable.

Therefore, Sandoval fails to show that the attorney's performance at the preliminary hearing fell below the objective standard of reasonableness, with the possible exception of the failure to obtain the record of Parra's emergency room treatment prior to the hearing. Even if we were to assume that this was an instance of substandard performance, we see no possibility, much less a reasonable probability, that the outcome of the proceeding would have been different.

As to the decision by Sandoval's second lawyer to stipulate to the reasonableness of the state's efforts to locate and serve Mr. Parra, we cannot say that the decision fell below professional standards because, as far as our record reveals, the state's efforts would have passed a challenge for reasonableness if the challenge had been made. A witness was prepared to testify about the efforts made to locate Mr. Parra, but we have no basis for assessing the strength of that potential testimony.

We note that Mr. Sandoval's argument about Parra's unavailability relies on two facts. First, it apparently came out at trial in discussion of the state's efforts that Parra's father knew where Parra was but had refused to reveal his location to the prosecution. This is troubling, but Mr. Sandoval does not say specifically what he contends his trial attorney should have done in response to this situation. There may have been tools available to the prosecution to convince Parra's father to cooperate, but Mr. Sandoval offers no suggestions and no legal authorities to support his argument. The second fact Sandoval relies upon is that

during voir dire a prospective juror indicated that he or she had rented an apartment to Mr. Parra in the recent past. But we do not know if the juror had actually seen Mr. Parra in the intervening weeks or months, or whether anyone followed up on this information.

These two facts are, we conclude, insufficient to establish that counsel could have had the prior testimony excluded had he tried to do so. That is to say, Sandoval casts some doubt on the question whether Mr. Parra was truly unavailable, in the legal sense, but his evidence is not sufficient for us to conclude that the state's efforts to locate him were not reasonable. Thus, we cannot conclude that counsel rendered ineffective assistance in stipulating to the reasonableness of the state's efforts to locate Parra.

Even if we were to assume, for purposes of argument, that it was a breach of the duty of reasonable competence to enter into the stipulation that opened the door to the admission of Parra's preliminary hearing testimony, we would find that Sandoval has failed to show prejudice sufficient to prevail under the *Strickland* standard. We have already discussed our conclusion that Sandoval has failed to show that the cross-examination of Parra by Sandoval's first attorney at the preliminary hearing was ineffective. Sandoval apparently would have us presume that a reasonably effective attorney cross-examining Parra at trial would have brought out testimony about Parra's past threats and the presence of alcohol in his body at the time of the incident. We are not persuaded that there is a reasonable probability that this would have affected the outcome.

Sandoval has not established that the state court's decision rejecting his *Strickland* claim was contrary to or an unreasonable application of that Supreme Court precedent.

-20-

**E**

Sandoval argues that the prosecution's failure to produce Parra's medical records before trial violated his Fifth Amendment due process right to a trial free from prosecutorial misconduct, specifically the withholding of evidence that would have aided his defense. He contends that the medical report on Parra's treatment at the emergency room immediately after the incident, which was not produced until the day of trial, was exculpatory evidence that the prosecution had a duty to disclose before trial so that trial counsel could have been prepared to utilize it. Sandoval asserts that the report showed that Parra had suffered a wound to his hand but not an exit wound corresponding to that wound. This evidence, he argues, would have supported his testimony that Parra had been armed, because the absence of an exit wound could be explained as the result of Parra holding something hard, like a pistol.

The state contends that this issue was not raised in Sandoval's direct appeal and was rejected by the state habeas court for that reason, citing the state court's statement that all of the issues raised in the state collateral proceeding "were available to Petitioner prior to direct appeal . . . ." But the state's brief truncates the quote in a troubling way: The state court went on to say that the issues not only were available on direct appeal but "in fact were presented . . . ." However, review of the appellate court's opinion on direct appeal yields no indication that this issue was in fact raised.

Under the circumstances, we will not decide this murky issue of procedural bar because the claim is easily defeated on the merits. A claim of suppression of material,

favorable evidence presents a mixed question of law and fact which we review de novo. *See Snow v. Sirmons*, 474 F.3d 693, 711 (10th Cir. 2007).

Sandoval invokes the now-familiar rule of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150 (1972). *Brady* held that due process requires the prosecution to produce on request evidence favorable to the accused that is material either to guilt or to punishment. *Giglio* held that the *Brady* rule encompasses evidence that is favorable to the accused by tending to impeach a prosecution witness.

We are not convinced that the evidence in question was either material or exculpatory. Sandoval does not show that, had the medical report been produced in ample time before trial, admissible evidence could have been adduced that would have supported his preferred explanation for the absence of an exit wound. No attempt is made to show what other explanations might exist to explain the medical report, and of course we thus have no basis to assess what the most likely explanation might be, or even if it is possible to gauge the likelihood of any explanation. Without some evidence to support it, Sandoval's assertion seems merely speculative. We acknowledge that a primary component of Sandoval's argument is that there was no opportunity *at trial* to gather any such evidence, but Sandoval had the burden in this proceeding to show that his theory was more than speculation. Because he has failed to do so, we cannot find that the medical report constituted material, exculpatory evidence, and so must conclude that no *Brady* violation has been established.

**F**

Finally, Sandoval contends that the federal district court should have held an

evidentiary hearing before deciding the issues raised in his petition. Because Sandoval's petition is governed by AEDPA, he can obtain an evidentiary hearing in federal court by (1) showing he was diligent in developing the factual basis for his claim in state court, 28 U.S.C. § 2254(e)(2) (2000); *Williams v. Taylor*, 529 U.S. 420, 429–31 (2000), and (2) asserting a factual basis that, if true, would entitle him to habeas relief, *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933, 1940 (2007); *Mayes v. Gibson*, 210 F.3d 1284, 1287 (10th Cir. 2000). This means he must show that, taking his allegations as true, he would prevail on his claim. Consistent with this standard, "an evidentiary hearing is unnecessary if the claim can be resolved on the record." *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005); *see also Schriro*, 127 S. Ct. at 1940 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

Sandoval has not shown that an evidentiary hearing would have aided his cause. We will assume that Sandoval was diligent in developing the factual basis for his claim of ineffective assistance in state court. The state does not contend otherwise, and it appears that the evidence submitted to the federal district court had earlier been submitted to the state court on collateral review. The dispositive point, we think, is that the district court did not discount Sandoval's evidence but held that the evidence was insufficient to show that he was entitled to habeas relief on his claims. We have found no error in that conclusion. Because the district court took that approach, as we have on appeal, the contention that an evidentiary hearing would have helped Sandoval's case is without merit.

Although Sandoval, in his brief, asserts that the federal magistrate judge "repeatedly acknowledged in his findings of fact that there were factual disputes presented by the parties," we disagree with that characterization. We have studied the portions of the magistrate judge's report to which Sandoval refers, and we find nothing to support his statement. Most significantly, we find nothing in the magistrate judge's report to suggest that he discounted or disregarded any of the evidence Sandoval presented by affidavit and otherwise.

Instead, both this court and the district court have credited the evidence presented but found that evidence insufficient to show that Sandoval's federal rights were violated. An evidentiary hearing was not required under these circumstances.

## Conclusion

The judgment of the district court is **AFFIRMED**.