**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 20, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BILLY E. PARKER,

        Petitioner-Appellant,

v.

JUSTIN JONES,

        Respondent-Appellee.

No. 10-6219
(D.C. No. 5:09-CV-00176-C)
(W.D. of Okla.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **O'BRIEN**, **McKAY**, and **TYMKOVICH**, Circuit Judges.[**]

Billy Parker, an Oklahoma state prisoner proceeding *pro se*,[1] seeks a

certificate of appealability (COA) to challenge the district court's denial of his

petition for a writ of habeas corpus under 28 U.S.C. § 2254, arising from his

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

[1] Because Parker is proceeding *pro se*, we construe his filings liberally. *See Van Deelan v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

conviction for first degree murder. He also requests an evidentiary hearing and moves for leave to proceed *in forma pauperis* on appeal.

Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we DENY Parker's request for a COA and DISMISS the appeal. We also DENY his request for an evidentiary hearing and motion to proceed *in forma pauperis*.

## I. Background

The record shows that in 1999, police discovered the body of 16-year-old Sherman Jackson on an Oklahoma City street. He had been shot once in the chest. Early that morning, Jackson, a known drug dealer, was seen driving a brown Buick Century, which he had recently borrowed from Petitioner Billy Parker in exchange for cocaine. That same morning, in response to Jackson's failure to return the car at the appointed time, Parker had asked his mother to drive around to look for the Buick. Parker's niece, Dakota Davis, and Davis's friend, Alvone "Apple" Moore, accompanied Parker's mother.

Parker's mother stopped at a Burger King not far from the crime scene and took into the restaurant a paper sack containing something heavy. Parker's mother drove off and, soon thereafter, saw Parker driving the Buick Century. Parker drove back to his mother's house, parked in the garage, and closed the door. Parker's mother followed him home.

Upon arriving home, Parker, his mother, and his brother attempted to clean splattered blood off of the vehicle's side window, windshield, and front seats.

Shortly after Parker dropped off the car in his mother's garage, Parker's brother doused the front seat with what appeared to be lighter fluid—and an hour later, a witness saw the car in the backyard with smoke coming from it. A forensic examination confirmed that blood spots on the Buick's seats and floorboards matched Jackson's DNA, and Parker's DNA was found on a blanket covering the car's charred seats.

It took Oklahoma City police several years to develop the case. Finally, in 2007, after locating the brown Buick and speaking with Moore, the government's key witness, Oklahoma charged Parker with first-degree murder.

Following a jury trial, Parker was convicted of first-degree murder and sentenced to life imprisonment without the possibility of parole. The Oklahoma Court of Criminal Appeals (OCCA) affirmed Parker's conviction on direct appeal. In 2008, however, the OCCA modified Parker's sentence to life imprisonment with the possibility of parole. In 2009, the state trial court denied Parker's request for post-conviction relief, and he did not appeal this decision to the OCCA. Later that year, Parker filed a federal habeas corpus petition in the Western District of Oklahoma, which was referred to a magistrate judge. The magistrate judge recommended the district court reject Parker's petition on the merits, and the district court adopted the magistrate judge's Report and Recommendation in its entirety. The district court subsequently declined to issue a COA and denied Parker's request to proceed *in forma pauperis* on appeal.

Parker now seeks a COA from this court to enable him to appeal the denial

of his federal habeas petition.  Specifically, he raises five issues:  (1) he was

denied the effective assistance of counsel; (2) the evidence presented at trial was

insufficient to sustain a first-degree murder conviction; (3) his rights under the

Confrontation Clause of the Sixth Amendment were violated; (4) the district court

erred in declining to grant an evidentiary hearing on Parker's ineffective

assistance of counsel and Confrontation Clause claims; and (5) the OCCA erred in

failing to consider the accumulation of trial errors in assessing whether to issue a

COA.[2]

## II.  Analysis

Without a COA, we lack jurisdiction to consider the merits of a habeas

appeal.  28 U.S.C. § 2253(c)(1)(A).  We may issue a COA only if "the applicant

has made a substantial showing of the denial of a constitutional right."  *Id.*

§ 2253(c)(2).  Where a district court has rejected a petitioner's constitutional

claims on the merits—as is the case here—the petitioner must demonstrate that

"reasonable jurists could debate whether (or, for that matter, agree that) the

---

[2]  In his Application for a COA, it is not clear whether Parker contests only
the district court's failure to grant an evidentiary hearing, or whether he also
contests the district court's substantive holdings that his counsel was
constitutionally adequate and that he suffered no Sixth Amendment violation.
Parker supplements his Application for a COA with what appear to be several
excerpts from his direct appeal briefs.  Because Parker appeals *pro se*, we
construe these materials as a brief in support of his Application and address all
arguments raised in the Application and the supporting materials.

-4-

petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation omitted).

Because the OCCA addressed the merits of Parker's claims, "[the Anti-Terrorism and Effective Death Penalty Act (AEDPA)]'s deferential treatment of state court decisions must be incorporated into our consideration of [his] request for [a] COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Under AEDPA, we may grant a habeas petition on a claim that was adjudicated on the merits in state court only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

Having thoroughly reviewed the record, we conclude Parker is not entitled to a COA for substantially the same reasons discussed by the district court. Petitioner has failed to demonstrate that reasonable jurists could debate whether the decisions of the state courts reviewing his case were contrary to or based on unreasonable applications of clearly established federal law.

**A. Ineffective Assistance of Counsel**

Parker first contends his trial counsel provided ineffective assistance by failing to (1) investigate and prepare for trial; (2) properly submit evidence

-5-

inculpating third parties; (3) call Dakota Davis to refute the testimony of Alvone "Apple" Moore, the state's key witness; (4) object to prosecutorial questioning that injected hearsay statements into the proceedings;[3] and (5) advocate Parker's cause.

To prevail on a claim for ineffective assistance of counsel, Parker must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner demonstrates deficient performance by showing counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Contrary to Parker's contentions, his trial counsel's performance was not constitutionally deficient. In fact, as the other courts reviewing this matter acknowledge, in many ways Parker's counsel was astute and diligent. First, although Parker's counsel did not call witnesses at trial, he asked for and obtained an evidentiary hearing on witness availability, gathered considerable evidence,

---

[3] Parker also frames this argument as an evidentiary issue. He says the trial court abused its discretion by permitting the prosecutor to ask questions by paraphrasing extrajudicial statements made by witnesses. However, as a constitutional challenge on federal habeas, we construe Parker's argument as taking issue with his counsel's failure to object to the prosecutor's questions—and not any action of the court.

traveled to California to interview witnesses, and effectively used police reports in his cross-examination of the police detective in charge. In the end, Parker quibbles only with his counsel's trial strategy—and not his competency.

The problem for Parker is that strategic decisions are constitutionally ineffective only if they are "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation omitted). Indeed, under *Strickland*, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. The decision making of Parker's counsel, even if questionable, certainly was not completely unreasonable.

Second, Parker's challenge to his counsel's decision not to submit evidence inculpating third parties is simply a corollary of his charge that counsel failed to investigate. In Parker's direct appeal and federal habeas petition, he alleges his counsel failed to investigate the alibis and criminal records of other potential suspects. For the reasons set forth above, we do not find Parker's counsel's investigative efforts constitutionally inadequate. And we find, just as the magistrate judge did, that Parker's counsel effectively used cross-examination to propound the theory that third parties were responsible for Jackson's murder. *See*

*Parker v. Jones*, No. CIV-09-176-C, 2010 WL 3729976, at *8 (W.D. Okla. July 12, 2010).  The Sixth Amendment requires counsel to make only reasonable investigations, or to make a reasonable decision that a particular investigation is unnecessary.  *Strickland*, 466 U.S. at 691; *Mayes v. Gibson*, 210 F.3d 1284, 1289 (10th Cir. 2000).  Counsel's performance in this case was not unreasonable.

Third, Parker's counsel was not ineffective for failing to call Dakota Davis as a witness.  Parker suggests Davis's statements would have called into question Moore's testimony.  On direct appeal, the OCCA questioned the value of Davis's testimony:

> Davis . . . told police that she did not know anything about the crime and was not present afterwards, even though Moore and others said she was.  However, the remainder of Davis's statement corroborated . . . testimony about Parker's drug habits and his cars.  Assuming without deciding that Davis's statement to police could form a basis for questioning, the decision not to use a statement which largely corroborated the State's case was a reasonable strategic decision.

*Parker v. Oklahoma*, No. F-2007-510, at *11 (Okla. Crim. App. Oct. 2, 2008).  The OCCA was correct.  Given questions regarding the utility of Davis's testimony to Parker's case, Parker's counsel made a reasonable strategic choice not susceptible to a *Strickland* challenge.

Fourth, Parker's counsel was not ineffective for failing to object to prosecutorial questioning that injected hearsay into the proceedings.  During trial, the prosecutor introduced hearsay statements during the examination of Parker's

mother and brother by paraphrasing their statements to the police. For example, the prosecutor asked Parker's mother: "[W]hen Detective Veasey interviewed you, isn't it true that you told Detective Veasey that some time around 7:00 a.m. on November the 17th of 1999, that you took your son Billy Parker to some apartments to look for his car." Trial Tr. at 634. As the OCCA found, although Parker could have objected to the prosecutor's method of questioning, his assistance was not ineffective because the underlying statements to the police were themselves admissible. Indeed, in all but one instance, either Parker's mother or brother was the declarant in each of the statements, and both witnesses testified and were the subject of cross-examination.[4] And it was not unreasonable for the OCCA to find no plain error and hold that "[t]he statements were used not to impeach the witnesses by showing their testimony was inconsistent with previous statements, but to refresh their memories concerning what they told investigators several years earlier." *Parker*, No. F-2007-510, at *9. Thus, as the district court properly held, because the evidence at issue was admissible under Oklahoma law, Parker's counsel was not ineffective in failing to object to its admission. *See Parker v. Scott*, 394 F.3d 1302, 1321–22 (10th Cir. 2005). Further, even if Parker's counsel was deficient in this regard, there was no

---

[4] As the OCCA explained, in one statement Parker's mother repeated to police a statement Dakota Davis made to her. Even if it was error to admit this statement, it was significantly less damaging to Parker than his mother's own statements, and thus any error was harmless.

reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687–94.

Finally, we find Parker's counsel did not make improper concessions during closing argument. Although conceding a client's guilt can be deficient performance, *Fisher v. Gibson*, 282 F.3d 1283, 1304 n.12 (10th Cir. 2002), that is not what Parker's counsel did here. Rather, as the OCCA recognized, Parker's counsel made a strategic decision to concede certain facts that could not reasonably be denied and emphasize Parker's lack of direct connection to the murder. Parker's argument is further belied by his counsel's repeated emphasis that the jury could not convict unless the evidence showed guilt beyond a reasonable doubt.

In sum, it is plain that, "in light of the entire record, [Parker's counsel] remained a legal advocate of the defendant who acted with undivided allegiance and faithful, devoted service to the defendant." *United States v. Williamson*, 53 F.3d 1500, 1511 (10th Cir. 1995) (citations and quotations omitted).

## B. Sufficiency of the Evidence

Parker also renews his claim that the evidence presented at trial was insufficient to support his first-degree murder conviction.

The Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364

-10-

(1970). On habeas review, the question whether evidence was sufficient to support a conviction "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining whether evidence was sufficient, we "may not weigh conflicting evidence nor consider the credibility of witnesses"; rather, we must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

In this case, as the magistrate judge found, the record reveals that a rational trier of fact could have found the essential elements of first-degree murder. Oklahoma's first-degree murder statute provides: "A person commits murder in the first degree when that person unlawfully and with malice aforethought causes the death of another human being. Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof." OKLA STAT. tit. 21, § 701.7(A) (1976). Accordingly, the elements of first-degree murder are (1) the unlawful, (2) death of a human, (3) caused by the defendant, (4) with malice aforethought.

-11-

The jury reasonably concluded these elements were satisfied. Although there is no direct evidence Parker killed Jackson, the record reflects the extensive circumstantial evidence introduced at trial. Among other evidence, the jury heard that (1) the last time Jackson was seen alive, he was driving Parker's brown Buick Century on the morning of his murder; (2) Parker was looking for the Buick on the morning of Jackson's murder, and he may have been carrying a gun; (3) Jackson was found dead in the vicinity of where Parker was later seen driving the Buick; (4) Parker quickly drove the car back to his mother's house, where others attempted to clean blood from the passenger compartment, which had been clean only a few days earlier; (5) Parker and his family burned the seats of the Brown Buick to destroy evidence; and (6) DNA analysis confirmed Jackson's blood was in the car, and that the blanket covering the charred seats contained DNA matching Parker's.

Thus, the jury heard ample evidence to convict Parker. Given our presumption that the jury resolved conflicting reasonable inferences in favor of the State, Parker has not made a substantial showing of the denial of a constitutional right, and he is not entitled to a COA on this issue.

In relation to his sufficiency of the evidence challenge, Parker also contends that on direct appeal, the OCCA erred in viewing Moore's preliminary hearing testimony in the light most favorable to the prosecution, given that Moore was unavailable to testify at trial. As the Supreme Court explained in *Jackson v.*

-12-

*Virginia*, 443 U.S. at 319, when a court hears a criminal defendant's appeal, the general rule is that it must view trial testimony in the light most favorable to the prosecution. The purpose of this rule is to protect the discretion of the jury and give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* "Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Id.*

Parker argues the OCCA erred in applying this standard to Moore's testimony, because she was not available to testify at trial. According to Parker, because Moore was unavailable, the OCCA was in the same position as the jury with respect to judging Moore's credibility, and thus it erred in adhering to the *Jackson* rule. Parker's argument fails, however, because *Jackson* applies to *all* of the evidence—not just testimony offered by witnesses present at trial. Parker points to no authority—and we find none—suggesting that the *Jackson* rule is inapplicable to testimony such as Moore's.

Thus, Parker has not made a substantial showing of the denial of a constitutional right.

## C. Confrontation Clause

Parker claims the trial court violated his Sixth Amendment right to confront witnesses against him when it allowed the State to present Moore by reading the transcript of her preliminary hearing testimony at trial. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Thus, the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54, 59 (2004). The Confrontation Clause applies to Moore's statements at the preliminary hearing, because they were testimonial hearsay. *Id.* at 68 (explaining that, at a minimum, testimonial hearsay includes "prior testimony at a preliminary hearing").

Although Moore was not present at trial for cross-examination, her testimony was admissible because the trial court determined she was unavailable, and because Parker's counsel thoroughly cross-examined her at the preliminary hearing. *Crawford*, 541 U.S. at 53–54 ("[T]he Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial *unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination*." (emphasis added)); *see also Sandoval v. Ulibarri*, 548 F.3d 902, 912 (10th Cir. 2008) ("[I]t is well established that prior testimony may be used

-14-

against an accused in a criminal trial where the accused had the opportunity to cross-examine the witness at the earlier proceeding and the state has shown that the witness was unavailable for trial."). "[A] witness is not 'unavailable' for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial." *Ohio v. Roberts*, 448 U.S. 56, 74 (1980), *overruled on other grounds*, *Crawford*, 541 U.S. at 36 (quotations omitted). "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness," and "[t]he ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness." *Id.* (quotations omitted).

There is no doubt Moore's testimony was crucial to the prosecution. Her statements provided the State's clearest connection between Parker and the murder. Recognizing this, Oklahoma worked assiduously to locate Moore in advance of trial. Indeed, the trial court rightly stated that "as far as due diligence on this end I think that [the State] ha[s] done all [it] can possibly do." Tr. of Mot. Hr'g at 48–49.

The record reflects the State's considerable efforts to produce Moore at trial. The trial court held a hearing to determine whether Moore was unavailable, and the State established that among other actions, it employed an investigative analyst; contacted Moore's mother; traced one of Moore's telephone numbers;

-15-

sent a letter to Moore's supposed address; attempted to locate Moore by checking her driver's license, license tag, and utilities records; filed a petition for certification of materiality; and sent the petition and a letter to the Travis County, Texas district attorney, in an attempt to secure Moore's presence. Further, Oklahoma employed a victim-witness advocate, who had located Moore in advance of the preliminary hearing, to search for Moore. Finally, as the district court recognized, Parker's Confrontation Clause concerns are mitigated by the fact that his counsel extensively cross-examined Moore at the preliminary hearing.

Based on these facts, Moore was "unavailable despite good-faith efforts undertaken prior to trial to locate and present [her]." *Roberts*, 448 U.S. at 74 (quoting *Green*, 399 U.S. at 189 n.22) (quotations omitted). The OCCA did not unreasonably apply Supreme Court law in concluding Parker's Sixth Amendment rights were not violated by the admission of Moore's preliminary hearing testimony, despite her absence at trial.

### D. Evidentiary Hearing

Parker next argues the district court should have granted his request for an evidentiary hearing before deciding multiple issues in his petition. Specifically, Parker seeks an evidentiary hearing to establish his trial counsel's allegedly deficient performance and the alleged denial of his right to confront a key governmental witness.

We review a district court's decision to grant or deny an evidentiary hearing in a habeas proceeding for abuse of discretion. *Vigil v. Zavaras*, 298 F.3d 935, 943 (10th Cir. 2002). "An abuse of discretion occurs when the district court bases its ruling on an erroneous conclusion of law or relies on clearly erroneous fact findings," *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998), or when the court's decision is "arbitrary, capricious, or whimsical," *Cox v. Sandia Corp.*, 941 F.2d 1124, 1125 (10th Cir. 1991).

Further, AEDPA provides that "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless the applicant shows "the claim relies on a new rule of constitutional law" or "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A). To develop the factual basis of a claim, "the prisoner, at a minimum, [must] seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams v. Taylor*, 529 U.S. 420, 437 (2000).

If the prisoner has developed a claim, a hearing is appropriate where the allegations, "if true, would entitle [the prisoner] to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Consistent with this standard, "an evidentiary hearing is unnecessary if the claim can be resolved on the record." *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005).

On direct appeal, the OCCA denied Parker's application for an evidentiary hearing on his ineffective assistance of counsel claim. The OCCA held Parker was not entitled to an evidentiary hearing, because he "fail[ed] to show by clear and convincing evidence there [was] a strong possibility that counsel was ineffective . . . ." *Parker*, No. F-2007-510, at *11. For the reasons set forth by the district court, and as explained above, the OCCA's analysis was sound: Parker has simply made no showing that his counsel's purported errors were anything other than strategic decisions unsusceptible to a *Strickland* challenge. Accordingly, Parker's ineffective assistance claim could be resolved on the basis of the record alone, and the district court did not abuse its discretion in declining to hold evidentiary hearings.

Parker did not, however, request that the OCCA grant him an evidentiary hearing on his Confrontation Clause claim. Even if he had, such a hearing would have been unnecessary and redundant, given that the trial court held a hearing precisely to address the key Confrontation Clause issue—the availability of Moore to testify at trial. For this reason—and because Parker has not presented evidence that the factual predicates for his Confrontation Clause claim could not have been discovered through due diligence, or that his habeas claim is based on a new rule of constitutional law—the district court's decision not to hold an evidentiary hearing was not an abuse of discretion.

## E.  Accumulation of Errors

Finally, Parker renews his claim that an accumulation of errors—which taken in isolation may not have required reversal—deprived him of a fair trial such that his petition should have been granted.  The OCCA did not err in denying this claim.  Because neither the district court nor the OCCA found any errors at all, it would have been pointless to assess whether the aggregate impact of a series of non-errors somehow affected the fairness of the trial.

## III.  Conclusion

For the reasons stated above, we DENY Parker's request for a COA and DISMISS the matter.  We also DENY his request for an evidentiary hearing.  Finally, because Parker has failed to identify a non-frivolous argument on appeal, we DENY his request to proceed *in forma pauperis*.  *See McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812–13 (10th Cir. 1997).

ENTERED FOR THE COURT

Timothy M. Tymkovich
Circuit Judge

-19-