Jerome MESSER, Petitioner–Appellant,

v.

Raymond ROBERTS, Respondent–Appellee.

No. 94–3362.

United States Court of Appeals, Tenth Circuit.

Jan. 23, 1996.

David J. Gottlieb, University of Kansas School of Law, Lawrence, KS, for Petitioner–Appellant.

John K. Bork, Assistant Attorney General for State of Kansas, Topeka, KS, for Respondent–Appellee.

Before McKAY and MOORE, Circuit Judges, and BRETT, District Judge.*

BRETT, District Judge.

In 1989, Petitioner–Appellant Jerome Messer ("Messer"), following a trial by jury, was convicted in Kansas state court of aggravated battery, receiving a sentence of five to fifteen years' imprisonment, and aggravated kidnapping, receiving a sentence of life imprisonment. He appeals from the denial by the United States District Court of Kansas of his application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

## ISSUES PRESENTED

I. Whether sufficient evidence exists to sustain Messer's conviction of aggravated kidnapping.

II. Whether the physical line-up in which Messer was identified created a substantial likelihood of irreparable misidentification.

III. Whether the court below erred by holding that Messer's failure, after a negative ruling on his constitutional claim following a motion to suppress, to object again at his state court trial constituted a procedural default sufficient to bar review of Petitioner's claim that the pretrial identifications were so

suggestive as to create a substantial likelihood of irreparable misidentification.

## I. BACKGROUND

On March 31, 1982, Wanda Albertson, the owner and operator of an antique store in Mission, Kansas, was physically assaulted and pistol-whipped in an attempted robbery of her store. On that morning, a man entered the store shortly after opening and browsed while Ms. Albertson moved sidewalk sale items to the outside of the store. As the man was apparently leaving the store, he accosted Ms. Albertson, produced a handgun, threatening to kill her if she screamed. Notwithstanding the threat, Ms. Albertson screamed and the man pistol-whipped her, rendering her unconscious. Ms. Albertson was found conscious and lying on her stomach approximately fifteen feet rearward in the store from where she last remembered being confronted by her assailant nearer the front of the store.

Ms. Albertson described her assailant as: (1) a white male, (2) in his mid-thirties, (3) five foot ten inches tall, (4) weighing approximately 160 pounds, (5) having medium-colored brown hair, (6) hair long on the sides but bald on top, (7) a receding hairline, (8) a bushy mustache, and (9) a scar under his right eye.

On the day Ms. Albertson was attacked, three women—Ms. Ruth Turner, Ms. Dorothy Combs and Ms. Susan Carver—were next door in a beauty shop. All saw a man passing in front of their shop immediately prior to the assault on Ms. Albertson, Ms. Combs sitting in a chair about fifteen feet from the front window, Ms. Turner sitting under a dryer twenty-five feet from the window, and Ms. Carver seeing the man in a mirror while approximately twenty feet away from the front glass. All of the women gave descriptions of the man that were similar to the description given by Ms. Albertson. Additionally, these witnesses noted the man they saw had a bulbous nose. Ms. Turner and Ms. Carver also saw the man, approxi-

* The Honorable Thomas R. Brett, United States District Judge for the Northern District of Okla- homa, sitting by designation.

mately ten minutes later, walk past the window in the opposite direction.

On April 1, 1982, the day after Ms. Albertson was attacked, a robbery occurred at Topsy's Ice Cream Parlor in Kansas City, Missouri, located approximately four miles from Albertson's antique shop, both stores being in the same general area of metropolitan Kansas City. Abbey Mirkin Mueller was working alone at the ice cream parlor when a man came into the store, asked for some change, and when she opened the cash register, demanded money. He then ordered her to lay down on the floor and count to one hundred, threatening death. Ms. Mueller described the man as: (1) a white male, (2) in his thirties to forties, (3) five foot ten, (4) brown, stringy hair, (5) with a receding hairline and balding, and (6) having a bushy mustache. Because of the similar descriptions of the perpetrator in each crime, the close proximity of the crimes, and the methods of operation, the detectives assigned to both cases believed the same man had committed both crimes.

On the day after her attack, Ms. Albertson, while recuperating in the hospital, was shown a photographic lineup that included Messer's picture among the five photos comprising the lineup. Albertson made no identification on any of the lineup choices but did state that Messer was not the man who attacked her.

The same photographic lineup was shown to Ms. Turner, Ms. Combs and Ms. Carver, all of whom identified Messer as the man who walked by their beauty shop on the day of the incident. Ms. Mueller, the victim of the Topsy's robbery, was shown a similar photographic lineup that included Messer. Mueller identified Messer as her assailant in the ice cream parlor robbery.

Approximately two weeks after Ms. Albertson was attacked, a joint physical lineup was conducted by the detectives in both investigations. The lineup consisted of three men, one of whom was Messer. Eyewitnesses Ms. Combs and Ms. Carver, and victims/eyewitnesses Ms. Albertson and Ms. Mueller were all present together in the

same room for the lineup, sitting at one table a few feet apart from one another.

At the lineup, Ms. Combs and Ms. Carver identified Messer as the man who walked by the beauty shop before the incident. Ms. Mueller identified Messer as her assailant in the Topsy's robbery.[1] Ms. Albertson identified Messer as her assailant in the antique store attack.

The state's case against Messer for the attack on Ms. Albertson in the trial court rested upon the identification of eyewitnesses. No other evidence, either physical or circumstantial, was introduced to connect Messer with the crimes.

## II. PROCEDURAL BACKGROUND

Messer appeals his denial of an application under 28 U.S.C. § 2254 for writ of habeas corpus to this Court from the United States District Court of Kansas. On September 22, 1994, the court below issued a final order and judgment denying the writ. On November 4, 1994, the court below granted Messer's request for a certificate of probable cause. This Court has jurisdiction under 28 U.S.C. § 2253 and 28 U.S.C. § 1291.

Messer was convicted in August 1983, in a state district court of Kansas, of aggravated kidnapping in violation of K.S.A. 21–3421, a class A felony, and aggravated battery in violation of K.S.A. 21–3414, a class C felony (the first state trial). Messer was sentenced to a term of five to fifteen years on the aggravated battery conviction and life imprisonment on the aggravated kidnapping conviction.

On October 26, 1984, the Kansas Supreme Court affirmed Messer's conviction in an unpublished opinion (*State v. Messer*, 688 P.2d 744 (Kan.1984)). On June 3, 1985, the United States Supreme Court denied a Petition for Writ of Certiorari. 105 S.Ct. 2674 (1985). Messer then pursued a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the first writ petition). On July 7, 1989, in an unpublished opinion, the United States District Court of Kansas vacated Messer's conviction to allow a new trial with the inclusion of previously

---

1. The Topsy's case was eventually dismissed because of evidence later discovered, a videotape of

the robbery, which indicated that Messer was not

unadmitted evidence of the misidentification of Messer in the Topsy's Ice Cream Parlor robbery. The district court did not rule on any other issue from Messer's appeal.

A second trial was held in Kansas state court before the same judge, Honorable Robert G. Jones (the second state trial). Messer again was convicted by a jury and on October 27, 1989, and again was sentenced to a term of five to fifteen years on the aggravated battery conviction and life imprisonment on the aggravated kidnapping conviction. These convictions were affirmed by the Supreme Court of Kansas in an unpublished opinion (the second state court appeal). In contrast to its opinion in 1984, the Kansas Supreme Court refused to decide the merits of Messer's eyewitness identification claim because of a procedural default, i.e., failure to make a contemporaneous objection at the time the eyewitnesses testified.[2] The Supreme Court of Kansas also ruled that there was sufficient evidence to sustain Messer's conviction of aggravated kidnapping.[3]

On September 22, 1994, the United States District Court of Kansas denied Messer's second request for a writ of habeas corpus (the second writ petition), noting that the aggravated kidnapping evidence was close but sufficient. The district court also refused to rule on the merits of eyewitness identification because of Messer's procedural default, holding that the contemporaneous objections rule was clearly established in Kansas cases decided before Messer's criminal trials.

## III. DISCUSSION

### A. Sufficiency of the Evidence: Aggravated Kidnapping Conviction.

■■■ Messer contends that the evidence was insufficient to sustain a conviction for aggravated kidnapping. The standard of review, as enunciated by the United States Supreme Court, is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Such review is "sharply limited" and a court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296–97, 112 S.Ct. 2482, 2492–93, 120 L.Ed.2d 225 (1992), *citing Jackson*, 443 U.S. at 326, 99 S.Ct. at 2792. The Court may not weigh conflicting evidence nor consider the credibility of witnesses. Rather, the Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir.1993).

K.S.A. 21–3420 defines kidnapping as follows:

Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

(a) For ransom, or as a shield or hostage; or

(b) To facilitate flight or the commission of any crime; or

(c) To inflict bodily injury or to terrorize the victim or another; or

(d) To interfere with the performance of any governmental or political function.[4]

The state alleges that the kidnapping in this case occurred pursuant to K.S.A. 21–3420(b); that is, to facilitate flight or commission of the crime of aggravated battery.

■■■ The seminal Kansas case on the extent of confinement necessary to support a kidnapping conviction under K.S.A. 21–3420(b) is *State v. Buggs*, 219 Kan. 203, 547

---

the robber. *State v. Messer*, 815 P.2d 119 (Kan. 1991).

**2.** As in the first state court trial, Messer's counsel unsuccessfully moved to suppress the state's identification procedure of photo lineups, actual lineups and in-court identification by the eyewitnesses.

**3.** Three judges dissented on the issue of sufficiency of evidence.

**4.** Aggravated kidnapping is defined as a kidnapping during which bodily harm is inflicted upon the person kidnapped. *See* K.S.A. 21–3421.

P.2d 720 (1976). Under *Buggs*, a kidnapping can occur even if the victim is transported only a short distance, or confined only a short time. "It is ... the fact, not the distance, of a taking (or the fact, not the time or place, of confinement) that supplies a necessary element of kidnapping." *Id.* 547 P.2d at 730. The facts at trial, reviewed in the light most favorable to the prosecution, establish that Ms. Albertson was beaten at the front of the store and dragged about 15 feet towards the back of the store.[5] On the floor at the front of the store were found a puddle of blood, strands of hair and a dental plate. Ms. Albertson was found at the back of the store, lying in another puddle of blood. A trail of blood smears extended from the front of the store to the back, where Ms. Albertson was found. Mr. Chapin, the state's expert witness, testified that the blood spatters indicated that Ms. Albertson was beaten at the front of the store, dragged towards the back, and beaten there. The Court holds that a rational factfinder could have found that a "taking" had occurred for the purposes of K.S.A. 21–3420.

▇▇▇▇ Merely finding that a taking occurred, however, is insufficient in itself to support a charge of kidnapping; rather, the taking must be done with the specific intent to accomplish one of the four types of objectives listed in the statute. *Id.* at 730; *State v. Dubish,* 234 Kan. 708, 675 P.2d 877 (1984). The question before the Court, therefore, is whether, under the facts of this case, any rational trier of fact could have found beyond a reasonable doubt that the taking was done to facilitate either flight or the commission of a crime, as the state alleges. *Buggs* provides a three-part test for courts to use in resolving this issue:

> [I]f a taking or confining is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:
>
> (a) Must not be slight, inconsequential and merely incidental to the other crime;

> (b) Must not be of a kind inherent in the nature of the other crime; and
>
> (c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*Id.* 547 P.2d at 731.

▇▇▇▇ The state, in its brief, addresses only the third prong of the *Buggs* test, alleging that the taking made the crime of aggravated battery "substantially easier of commission" by removing the victim from sight of passers-by who could look in the shop window. The state points out that the part of the shop in which Ms. Albertson was found was farthest away from the telephone, the front entrance and the front window.

The Court believes, however, that moving the victim 15 feet did not make the crime of aggravated battery "substantially easier of commission" because, according to the blood evidence, the battery already had occurred before Ms. Albertson was moved. Ms. Albertson was beaten at the front of the store, then dragged back 15 feet and beaten again. By the time the taking occurred, the crime of aggravated battery was complete; dragging her did not make commission of the aggravated battery substantially easier. Nor did the move substantially lessen the risk of detection, as per the third prong of the *Buggs* test. The evidence shows that Ms. Albertson was found in main walkway in the open store area and not behind furniture or other potential concealment. The beating at the back of the store did not occur in a different room, or behind something that could have hidden the incident from view. This movement, in the Court's view, was "slight, inconsequential and merely incidental" to the crime of aggravated battery, which means that the first prong of the *Buggs* test also is not met in this case.[6]

Regarding the first prong of the *Buggs* test, the Kansas Supreme Court recently re-

---

5. While Messer alleges that Ms. Anderson could have dragged herself along the floor, or that the smear marks could have been made by rescue workers, this Court, according to *Jackson,* cannot weigh conflicting evidence.

6. The Court acknowledges that the second prong of the *Buggs* test is met in this case: moving the victim 15 feet is not "inherent in the nature" of the crime of aggravated battery.

versed an aggravated kidnapping conviction because, the court held, moving two victims through a restaurant, without binding them or hiding them in some way, did not make the crime of aggravated robbery substantially easier of commission. *State v. Fisher*, 257 Kan. 65, 891 P.2d 1065 (1995). Rather, the court held that such transportation was merely for the purpose of convenience. "It was more convenient to have [the victims], who knew where the key to the safe was located, obtain the key rather than the robber alone looking for the key and rather than attempting some other means of entry into the safe." *Id.* 891 P.2d at 1065. The *Fisher* court noted that the victims were not forced to remain in the back office, out of sight of any passersby, to lessen the risk of detection. *Id.*

■ The state also contends that moving Ms. Albertson 15 feet "facilitated flight" under K.S.A. 21–3420(b) because Ms. Albertson's body would have been harder to see from the sidewalk outside. Kansas courts have stated that the three-pronged *Buggs* test applies to "facilitate flight" cases as well as to "facilitate the commission of a crime" cases. *State v. Richmond*, 258 Kan. 449, 904 P.2d 974 (1995). For the same reasons as outlined above, the Court rejects this argument: moving Ms. Albertson 15 feet, without binding her or hiding her, does not "substantially" lessen the risk of detection. The fact that Ms. Albertson was found, unhidden, 15 feet from where she was originally attacked does not in any way support the inference that such movement was to facilitate flight from the scene; as stated above, she was not hidden or bound in any way. The Court holds that the first and third prongs of the *Buggs* test are not met in this case. A rational trier of fact could not have found beyond a reasonable doubt the essential elements of the crime of aggravated kidnapping. Therefore, the Court concludes that the district court erred in not granting the writ of habeas corpus due to the failure of proof of aggravated kidnapping.

B. State Procedural Default to Bar Review of Messer's Claim.

This is presented as Issue III in Messer's brief. Since this issue, if decided contra to Messer's position, would preclude the examination of Issue II, the Court deems it prudent to reach this issue prior to Issue II.

Messer argues that his failure to object at trial to the eyewitness identifications of him by the victim and bystanders did not constitute an adequate and independent state ground sufficient to preclude federal review. He urges the record was adequately preserved because the identification issue was raised and ruled upon after a suppression hearing and the State of Kansas had no rule, prior to Messer's case, requiring essentially the same objection at trial.

■ The basic premise is that federal courts need not review habeas corpus issues that were defaulted in state courts if the default constitutes an adequate and independent state ground. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). However, not all state procedural rules are accorded deference by federal courts. *James v. Kentucky*, 466 U.S. 341, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984). The rule must be a "firmly established and regularly followed state practice." *Id.* at 348, 104 S.Ct. at 1835. *See also, Ford v. Georgia*, 498 U.S. 411, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). Additionally, the default must also have been applied to all similar claims in an evenhanded manner in the majority of cases. *Andrews v. Deland*, 943 F.2d 1162, 1190 (10th Cir.1991), *cert. denied*, 502 U.S. 1110, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992).

■ Messer argues the issue herein is not whether the state of Kansas embraces a "contemporaneous objection rule", which it arguably does, but whether it had "firmly established" such a rule and "regularly followed" it in cases where, as here, the defendant moved to suppress the evidence in issue, received an adverse ruling, and then failed to object at trial.

Apparently this issue is not altogether settled in the Kansas courts. *State v. Urban*, 3 Kan.App.2d 367, 595 P.2d 352 (1979), *State v. Gordon*, 219 Kan. 643, 549 P.2d 886 (1976), and *State v. Miles*, 233 Kan. 286, 662 P.2d 1227 (1983), stand for the general proposition that moving to suppress the evidence prior to

trial, having a hearing thereon, and being denied the relief sought, satisfies the rule and "failure to object at trial does not preclude consideration of the issue on appeal." *Urban*, 595 P.2d at 354. Other language in similarly factual cases support this proposition. *State v. Watie*, 223 Kan. 337, 574 P.2d 1368, 1374 (1978); *State v. Hornbeak*, 221 Kan. 397, 559 P.2d 385 (1977).

Standing in contrast to this precedent is *State v. Chiles*, 226 Kan. 140, 595 P.2d 1130 (1979), which held that a challenged photographic identification did not give rise to an irreparable mistaken identification where the defendant had failed to object to the testimony concerning the identification at trial. Messer attacks *Chiles* as not being "firmly established" precedent nor "regularly followed" since in the decade following the trial in Messer's case, *Chiles* was never cited by a reported Kansas case for the proposition that a defendant who receives an adverse ruling after a motion to suppress is required to object a second time at trial. However, *Chiles* is arguably the law since never overruled. The Court concludes that Kansas law was not so firmly established and regularly followed to constitute a bar. *Klein v. Neal*, 45 F.3d 1395, 1397 (10th Cir.1995); *Brecheen v. Reynolds*, 41 F.3d 1343, 1353 (10th Cir.1994), quoting *Andrews v. Deland*, 943 F.2d 1162, 1188, n. 40.

In this case, Kansas stated Messer's claim was procedurally barred without analysis of the contrary Kansas precedent. Neither this ruling nor Kansas law provides an adequate and independent state ground. Thus, the rule is not a "firmly established and regularly followed state practice," *James v. Kentucky*, 466 U.S. 341, 348, 104 S.Ct. 1830, 1835, 80 L.Ed.2d 346 (1984), nor is default applied to all similar claims in an evenhanded way. *Andrews*, 943 F.2d at 1188. Accordingly, this Court concludes that Messer should not be procedurally barred from raising the admissibility of identification issue on appeal.

### C. Admissibility of Identification Testimony

 Messer was identified by the victim, Ms. Albertson, and two of the three beauty shop occupants[7] from a three-man lineup. The law is established, and Messer concedes, that three-man lineups are not alone unconstitutional. *Pratt v. Parratt*, 615 F.2d 486, 487–488 (8th Cir.1980) *cert. denied*, 449 U.S. 852, 101 S.Ct. 143, 66 L.Ed.2d 64 (1980). Messer argues the three-man lineup was unduly suggestive in that Messer was the only one of the three who closely matched the descriptions given by the witnesses after the crime was committed. A photograph of the three-man lineup (Exhibit 15 in the record), supports a finding that the three men shown possessed sufficient similarities in size, coloration, height, complexion, hair color, full mustaches, somewhat receding hairlines, dress and weight to pass constitutional muster.

All of the beauty shop witnesses focused on mustaches and receding hairlines, characteristics somewhat similar among the three men shown. Ms. Combs, Ms. Turner and Ms. Carver all identified Messer in court. The victim Albertson, although failing to identify Messer from the five-photo lineup the day following the Albertson attack while at a hospital, injured and under sedation, later identified Messer from the three-man physical lineup and in court. Ms. Albertson's verbal description of Messer immediately after the assault was also generally corroborative.

Messer cites the two-part test applicable to challenged identification testimony, which this Court embraces. *United States v. Larkin*, 978 F.2d 964, 969 (7th Cir.1992) *cert. denied* 507 U.S. 935, 113 S.Ct. 1323, 122 L.Ed.2d 709 (1993). Initially, the movant must show that the identification process was unduly suggestive. Secondly, suppression of such evidence is only warranted where the identification procedures, in view of the totality of the circumstances, was not reliable enough to prevent a substantial likelihood of misidentification. Here, the record supports the state's contention that the identification process was not unduly suggestive and the Court concludes its reliability is not of constitutional dimensions.

---

7. Ms. Turner was not at the three-man physical lineup held several weeks after the attack on Ms. Albertson.

This is so notwithstanding Messer's argument that the physical lineup, held in the joint presence of all eyewitnesses except Ms. Turner[8], was inordinately capable of choice suggestion by the "body language" of the other witnesses. The witnesses were not told whom to choose or to choose at all. The choices made by the witnesses resulted from their own individual decisions. The record supports that no one spoke during the lineup notwithstanding Ms. Albertson's conflicting testimony as to the silence observed during the lineup[9]. Considering the totality of the circumstances, the Court concludes the record supports that the jointly held lineup did no constitutional violence to Messer's rights.

Further, Messer charges that two of the witnesses to the physical lineup, the victim, Ms. Albertson and Ms. Combs, had been told prior thereto that the police had someone in custody which "may" have caused the witnesses to feel they must select someone. Only the testimony of Ms. Albertson lends any credence to this argument.[10] The specific testimony is pertinent.

Q. When you went to the line-up that day, the physical line-up, Mrs. Albertson, did you feel that they wanted to you (sic) identify somebody?

A. I think they did, yes.

Q. Well, why did you—so you did feel that way?

A. Well, because I think they thought they had the man that had beaten me up and they wanted me to identify him.

Q. Okay. They wanted you to identify him?

A. Well, yes.

(Vol. XVIII, at 365)

Given the totality of the circumstances, the Court does not conclude that this record supports a compulsion on the part of the victim/eyewitness, Ms. Albertson, to identify anyone. It is just as reasonable to conclude

that Ms. Albertson was echoing Ms. Combs' observation that when the police present a physical lineup to eyewitnesses it is reasonable to assume the police have someone in custody who may be in the lineup. As in the other aspects of the identification issue, the Court feels there has been no overreaching of constitutional dimensions which stand in violation of Messer's rights.

## SUMMARY

For the reasons stated above, the Court hereby REVERSES the district court's denial of a writ of habeas corpus as to Messer's aggravated kidnapping conviction, and REMANDS to the district court for issuance of the writ. The district court is AFFIRMED on the issue of admissibility of identification testimony, and is accordingly AFFIRMED as to Messer's conviction of aggravated battery.

8. Ms. Turner made an identification from the five-photo photograph lineup.

9. At the first trial, Ms. Albertson testified that sometime during the lineup all of the witnesses exclaimed "Well, there he is". While at the second trial seven years later, she changed her testimony to indicate that none of the witnesses had spoken.

10. At the earlier trial, Ms. Combs testified that she was aware the police had someone under arrest. At the second trial, Ms. Combs modified this to mean she assumed the police had arrested someone and "had someone for us to look at." (Vol. XVII, at 138)