**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 24, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

PHILLIP ANTONIO DAVIS,

Petitioner - Appellant,

v.

JOE M. ALLBAUGH,

Respondent - Appellee.

No. 18-6131
(D.C. No. 5:16-CV-00866-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **MURPHY**, and **CARSON**, Circuit Judges.

## I. INTRODUCTION

An Oklahoma state jury found Phillip Davis guilty of first-degree murder, Okla. Stat. tit. 21, § 701.7, and possession of a firearm after a felony conviction, *id.* § 1283. The Oklahoma Court of Criminal Appeals ("OCCA") summarily affirmed Davis's convictions. *Davis v. State*, No. F-2014-25, at 6 (Okla. Crim. App. April 29, 2015). Thereafter, Davis filed a timely 28 U.S.C. § 2254 petition

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

raising many of the claims he raised on direct appeal. Davis's petition was referred to a magistrate judge for initial proceedings, 28 U.S.C. § 636(b)(1)(B); the magistrate judge recommended that the petition be denied. Upon de novo review, *id.*, the district court adopted the recommendation and denied Davis's petition. The district court granted Davis a certificate of appealability ("COA"), 28 U.S.C. § 2253(c)(1)(A), allowing him to raise on appeal all issues set out in his § 2254 petition.[1] On appeal, Davis asserts (1) he was denied the right to present a complete defense at trial, (2) he was denied the effective assistance of counsel, (3) his conviction for first degree murder was not supported by sufficient evidence, and (4) the accumulation of errors denied him a fundamentally fair trial. None of these contentions is meritorious. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c), we **affirm** the order denying Davis's § 2254 petition.

---

[1]"[B]lanket COAs," like the one entered by the district court, are at odds with the statutory provisions governing appeals in § 2254 proceedings. *Thomas v. Gibson*, 218 F.3d 1213, 1219 n.1 (10th Cir. 2000) (quotation omitted); 28 U.S.C. § 2253(c)(2) (providing that a COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right"); *id.* § 2253(c)(3) (providing that any COA "shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2) ]"). Nevertheless, in light of the district court's grant of a blanket COA, we must review the merits of each claim raised on appeal. *Thomas*, 218 F.3d at 1219 n.1.

## II. BACKGROUND

The OCCA outlined the facts underlying Davis's convictions. This court "presume[s] that the factual findings of the state court are correct unless [a habeas petitioner] presents clear and convincing evidence otherwise." *Lockett v. Trammell*, 711 F.3d 1218, 1222 (10th Cir. 2013) (quotation omitted); *see also* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). The OCCA set out the following brief factual summary:

> [Davis] was convicted of using a shotgun (which he was prohibited from possessing) to kill Keaunce Mustin at the apartment home of Signolia Vaughn. Mustin had been in a relationship with Vaughn, and had been living at her apartment. Vaughn also had an intimate relationship with [Davis] during this time. Vaughn testified that in the days before the shooting, she asked Mustin to move out and changed the lock on the front door. She also purchased a pistol with [Davis's] advice, and asked [Davis] to stay the night at her apartment. [Davis] agreed, and brought his own shotgun with him. When Mustin got off work around 2:00 a.m., he went to Vaughn's apartment. Hearing a commotion outside, Vaughn called 911 to report an intruder. While Vaughn was talking to the dispatcher, [Davis] retrieved his shotgun and fired a single shot through the living-room window at Mustin, who was standing in front of the window, killing him. After initially claiming he did not know who fired the shot, [Davis] admitted to police that he was the shooter, and claimed the person was trying to open the living-room window when he ([Davis]) fired the gun. However, he maintained to police, and Vaughn herself maintained at trial, that they had no idea who the person was. The jury rejected [Davis's] claim that the shooting was justified in self-defense, defense of another, and/or defense of habitation.

*Davis*, No. F-2014-25, at 2–3.  Additional facts, both historical and procedural, are set out below in this court's discussion of the issues Davis raises on appeal.

### III.  ANALYSIS

## A.  The AEDPA Standard

Our review of the claims set out in Davis's § 2254 petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 2006 ("AEDPA").

> AEDPA requires that we apply a "difficult to meet" and "highly deferential standard" in federal habeas proceedings . . . ; it "demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).  When a petitioner includes in his habeas application a "claim that was adjudicated on the merits in State court proceedings," a federal court shall not grant relief on that claim unless the state-court decision:
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> 28 U.S.C. § 2254(d)(1)–(2).
>
> Section 2254(d)(1)'s reference to "clearly established Federal law, as determined by the Supreme Court of the United States," "refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  "Federal courts may not extract clearly established law from the general legal principles developed in factually distinct contexts, and Supreme Court holdings must be construed narrowly and consist only of something akin to

on-point holdings." *Fairchild v. Trammell ("Fairchild I")*, 784 F.3d 702, 710 (10th Cir. 2015) (internal quotation marks and citation omitted).

Under § 2254(d)(1), a state-court decision is "contrary to" the Supreme Court's clearly established precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [that] precedent." *Williams*, 529 U.S. at 405–06. A state court need not cite, or even be aware of, applicable Supreme Court decisions, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

A state-court decision is an "unreasonable application" of Supreme Court law if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407–08. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). Conversely, "[i]f a legal rule is specific, the range may be narrow," and "[a]pplications of the rule may be plainly correct or incorrect." *Id.* And "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphases in original).

If we determine that a state-court decision is either contrary to clearly established Supreme Court law or an unreasonable application of that law, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding, we then apply de novo review and may only grant habeas relief if the petitioner is entitled to relief under that standard.

*Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019).

-5-

**B. Discussion**

    **1. Right to Present Complete Defense**

        **a. Clearly Established Law**

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotations omitted). Thus, state courts cannot exclude evidence by "rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* (alteration and quotations omitted). The "essential purpose" of the Confrontation Clause "is *to secure for the opponent the opportunity of cross-examination.*" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (quotations omitted). Nevertheless, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679; *see also Nevada v. Jackson*, 569 U.S. 505, 509 (2013).

The Confrontation Clause grants the "*opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to

whatever extent, the defense might wish." *Van Arsdall*, 475 U.S. at 679

(quotation omitted); *see also United States v. Dowlin*, 408 F.3d 647, 659 (10th

Cir. 2005) (recognizing that "the right to present defense witnesses is not

absolute," as the accused "must abide [by] the rules of evidence and procedure,

including standards of relevance and materiality" (quotations omitted)). For that

reason, the Supreme Court has "rarely . . . held that the right to present a

complete defense was violated by the exclusion of defense evidence under a state

rule of evidence." *Jackson*, 569 U.S. at 509 (collecting cases).

### b. Background

In his habeas petition, Davis asserted the exclusion of certain evidence

violated his right to present a complete defense. He argued he should have been

permitted to present at trial evidence regarding Mustin's drug use and conduct

toward Vaughn.[2] He also asserted he should have been allowed to question

---

[2]The magistrate judge helpfully summarized the excluded evidence:

At trial, the State called [Vaughn] to testify. During
cross-examination defense counsel attempted several times to ask
[Vaughn] about her dealings with [Mustin] shortly before the
shooting and about [Vaughn's] feelings toward [Mustin]. The trial
court sustained the State's objections, finding the questions called for
hearsay or were irrelevant.

The State called Velvet Mustin, the victim's mother, to testify at
trial. During cross-examination, defense counsel attempted to ask
[Velvet] about an incident when [Vaughn] had told the victim to

(continued...)

-7-

Vaughn about why she was not charged with a crime in connection with the

shooting.  The OCCA concluded Davis was not entitled to relief based on any of

these contentions:

> As to Proposition I, evidence of the victim's drug use and threatening conduct toward Signolia Vaughn was not relevant to whether [Davis's] use of deadly force was reasonable under the circumstances, because both Vaughn and [Davis] claimed they had no idea who the would-be intruder was.  In any event, the jury did, in fact, hear a fair amount of testimony on these subjects.  Because a witness's possible bias is always a proper inquiry, the trial court erred by not allowing defense counsel to ask Vaughn whether her testimony was affected by the possibility of her being charged in connection with the victim's death.  However, this error was harmless beyond a reasonable doubt, because [Davis] does not point to any part of Vaughn's testimony that was inconsistent with his own

---

[2](...continued)
leave her apartment and had asked [Velvet] for assistance.  The trial court initially permitted the questioning, but when [Velvet] testified that the incident had occurred the same week as the shooting—rather than on the same day—the court sustained the prosecution's relevance objection.

Prior to trial, [Davis's] counsel had filed a motion in limine that included a request to admit evidence that [Mustin] was under the influence of PCP at the time of his death.  At a pretrial hearing, the trial court reserved ruling on the request.  At trial, the trial court permitted [Davis's] counsel to question a [police] officer about a glass PCP vial found on the ground about ten feet from the shooting victim but advised counsel not to ask whether the vial had belonged to the victim.

Defense counsel sought to introduce evidence at trial regarding a toxicology report that had been conducted on the victim.  The trial court denied admission of that evidence on the grounds that it was irrelevant and highly prejudicial.

account to police, or which otherwise prejudiced his theory of defense.  Proposition I is denied.

*Davis*, No. F-2014-25, at 3 (citation omitted).  The district court concluded Davis was not, given the governing AEDPA standards, entitled to habeas relief on any aspect of this claim.  As to evidence regarding Mustin's drug use and interactions with Vaughn, the district court concluded the OCCA did not apply Oklahoma's evidentiary rules in a per se fashion but, instead, reviewed the admissability of such evidence on the merits and excluded it on a rational basis.  *Cf. Dodd v. Trammell*, 753 F.3d 971, 987–88 (10th Cir. 2013) (noting the Supreme Court has only granted relief on denial of the right to present a complete defense when "the state court either had provided no rationale for the exclusion, could not defend an absurd rule, or had failed to examine the reliability of the specific evidence in that case" (citation omitted)).  In addition, the district court noted the OCCA was correct in concluding the jury did, in fact, hear a "fair amount of testimony on these subjects." *Davis*, No. F-2014-25, at 6–7.  As to evidence indicating Vaughn was not charged in Mustin's murder, the district court concluded the trial court error did not have substantial and injurious effect on the jury's verdict under the standard for habeas review set out in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

### c. Analysis

### i. Mustin's Drug Use and Threatening Conduct

*Dodd* forecloses Davis's assertion that he is entitled to relief on this aspect of his habeas claim. 753 F.3d at 985–89. Davis has not shown the OCCA applied Oklahoma's rules of evidence "in a per se or mechanistic manner"; instead, the OCCA "analyzed [Davis's] evidence on the merits" and found it properly excluded. *Id*. at 988 (quotation omitted). The prosecution advanced at trial a "rational justification" for exclusion of the disputed evidence and "there were rational grounds for exclusion" by the trial court. *Id.* at 987 (quotation omitted)[3]; *see also* Mag. J. Report and Recommendation, May 1, 2018, at 6 (collecting trial transcript citations). Furthermore, the trial court's evidentiary rulings did not result in wholesale exclusion of this type of evidence.[4] Even if this court might

---

[3]"Relevant evidence is evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Okla. Stat. tit. 12, § 2401. For evidence of Mustin's past behavior to be relevant to whether Davis had a reasonable belief his use of deadly force was necessary to protect himself or others, it would have to show Davis knew he was shooting Mustin. *Cf. Davis v. State*, 268 P.3d 86, 125 (Okla. Crim. App. 2011). Davis's defense at trial was that he had no knowledge of the identity of the would-be intruder. Moreover, Davis does not argue Oklahoma law is unconstitutional on its face or amounts to an "absurd" evidentiary rule that cannot "be rationally defended." *Dodd v. Trammell*, 753 F.3d 971, 986–87 (10th Cir. 2013).

[4]Through Velvet, defense counsel elicited that there was an incident when Vaughn called Velvet because she needed help with Mustin. Vaughn herself testified she asked Davis to spend the night with her because she "was scared of

(continued...)

have made different rulings on the admissibility of the evidence, the OCCA's decision was not contrary to or an unreasonable application of Supreme Court precedent, nor was it based on an unreasonable determination of the facts. *Id.* Because Davis cannot demonstrate the OCCA's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement," habeas relief must be denied. *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

---

[4](...continued)
[Mustin] because of some things that had happened earlier that week and before." Vaughn testified she asked Mustin to leave her apartment because he smoked in her bathroom and she and her children had asthma. She stated "there were some instances where [she] was scared of [Mustin] and [she] asked him to leave and he said he wouldn't leave." Mustin's refusal to leave, she testified, placed her in fear for herself and her children. Vaughn testified she changed the locks on her apartment a few days before the shooting without giving Mustin a new key. She testified it was understood Mustin was to find somewhere else to live and she had been taking him to look at new places. Vaughn testified she twice told Velvet that Mustin was no longer allowed in her home. Over the prosecution's relevance objection, the trial court allowed defense counsel to ask Vaughn why she went to Velvet's home seeking her help; Vaughn testified it was because she was afraid of Mustin. She also testified part of the reason she bought a gun shortly before Mustin was killed was due to her fear of Mustin. Vaughn testified that on the night of the shooting, Mustin was not welcome in her home and he, as well as his family, knew that fact. Vaughn was also permitted to testify regarding the last time Mustin was at her home, which was either the night or early morning before the shooting. Vaughn was asleep when Mustin began "wailing and banging his head on the wall outside." Vaughn was awakened by a crash that turned out to be Mustin throwing Vaughn's patio table. Mustin's behavior scared Vaughn, so she and Velvet took Mustin to the hospital. That was the last time Vaughn saw Mustin alive, though she later learned Mustin had been released from the hospital. Vaughn testified that although she had been in an intimate relationship with Mustin she ended it due to his behavior and threats toward her.

-11-

## ii. Cross-Examination of Vaughn About Lack of Charges

Like the district court, we have no difficulty concluding the trial court error did not have a substantial and injurious effect on the jury's verdict. Davis asserts Vaughn was reluctant to present evidence that would fully exonerate him because it would have potentially led to her prosecution. In contrast to this assertion, however, Vaughn's testimony was consistent with and lent credibility to Davis's theory of the case: he fired in defense against an unknown intruder.[5] Furthermore, the trial court allowed Davis to cross-examine Vaughn on other matters relevant to her credibility. And, as cataloged at length in the magistrate judge's Report and Recommendation, there was considerable evidence and testimony, including Davis's own admissions, to support the prosecution's essential contention that Davis picked up his loaded shotgun, aimed it at a person in the window, and fired a single shot, killing Mustin. Moreover, there was evidence before the jury that undermined Davis's assertions of self-defense,

---

[5]Vaughn testified she was awakened in the night to the sounds of someone trying to come in to her apartment through the window; she woke Davis, prompting him to get up and hear the same sounds; no one had ever entered, or would be welcome to enter, her home through a window; on the night of the shooting, she was not expecting any visitors other than Davis and his son, who were already present; when she heard the sounds of someone breaking in, she would not have expected Mustin to be at her window; the "whole ordeal was scary," as she did not know who or how many people were trying to come in through her window; she called 911 because someone was breaking in and she feared for her and her children's safety; and there was no reason for Davis to believe it was Mustin outside her window that night.

-12-

defense of another, and defense of property. In particular, there was evidence Davis initially claimed Vaughn shot Mustin but eventually confessed that he was the shooter after officers noted a test would determine who actually fired the weapon. This court has no doubt, let alone grave doubt, that the trial court's improper limitations on Davis's cross-examination of Vaughn did not have a substantial and injurious effect or influence on the jury's verdict. Thus, the district court correctly denied Davis's claim for habeas relief.

## 2. Ineffective Assistance of Counsel

### a. Clearly Established Law

*Strickland v. Washington*, 466 U.S. 668 (1984), established the two-prong test used to determine whether a defendant received ineffective assistance of counsel. Under the first prong, a petitioner must show counsel's performance was deficient to the point "counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. A strong presumption exists that counsel provided adequate assistance. *Id.* at 689–90. Under *Strickland*'s second prong, a petitioner must show counsel's errors and omissions resulted in actual prejudice. *Id.* That is, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Failure to make the requisite showing

-13-

under either of these prongs defeats a claim of ineffective assistance. *Id.* at 697.

When a *Strickland* claim is raised in a § 2254 proceeding, the petitioner faces an

even greater burden because this court's review is "doubly deferential." *Knowles*

*v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Harrington*, 562 U.S. at 105

("The standards created by *Strickland* and § 2254(d) are both highly deferential,

and when the two apply in tandem, review is doubly so." (citations and quotations

omitted)). "The question is not whether a federal court believes the state court's

determination under the *Strickland* standard was incorrect but whether that

determination was unreasonable—a substantially higher threshold." *Knowles*, 556

U.S. at 123 (quotations omitted). "[B]ecause the *Strickland* standard is a general

standard, a state court has even more latitude to reasonably determine that a

defendant has not satisfied that standard." *Id.*

### b. Background

On direct appeal, Davis argued the prosecution engaged in twelve instances

of misconduct during closing argument. He also asserted his trial counsel was

ineffective based on the failure to object to the alleged instances of prosecutorial

misconduct. The OCCA rejected on the merits Davis's assertion of misconduct:

"[B]ecause [Davis] did not object to the prosecutor's closing comments at the

time they were made, we review this claim only for plain error. . . . We find all

of the prosecutor's comments were reasonable inferences from the evidence

presented." *Davis*, No. F-2014-25, at 4 (citations omitted); *see also Douglas v. Workman*, 560 F.3d 1156, 1171 (10th Cir. 2009) ("[W]hen a state court applies plain error review in disposing of a federal claim, the decision is on the merits to the extent that the state court finds the claim lacks merit under federal law."). Having held the prosecutor's comments did not amount to misconduct, the OCCA further concluded Davis's *Strickland* claim necessarily failed. *Davis*, No. F-2014-25, at 4 ("[B]ecause we have found the prosecutor's closing arguments to be unobjectionable . . . , timely objections to them by trial counsel would have properly been overruled. Therefore, [Davis] cannot demonstrate prejudice from counsel's failure to object. Trial counsel was not ineffective.").

In his habeas petition, Davis challenged six comments made by the prosecutor during closing arguments, asserting those comments amounted to remediable misconduct. The district court analyzed each of the alleged instances of misconduct at length under the appropriate standard[6] and concluded Davis had

---

[6]Under this court's precedent,

> a prosecutor's misconduct will [ordinarily] require reversal of a state court conviction only where the remark sufficiently infected the trial . . . to make it fundamentally unfair, and, therefore, a denial of due process. Nonetheless, when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair.

(continued...)

not established a constitutional violation. Having so concluded, the district court ruled that Davis was, likewise, not entitled to relief on his claim of ineffective assistance.

### c. Analysis

Davis's appellate briefing of his claim of ineffective assistance is extraordinarily limited. He merely asserts, without citation to relevant authority, that the district court erred in concluding his claim of ineffective assistance failed because he had not stated a viable claim of prosecutorial misconduct. *But see Hanson v. Sherrod*, 797 F.3d 810, 837 (10th Cir. 2015) ("[B]efore [petitioner] can succeed on his counsel's failure-to-object claims, he must show that the underlying prosecutorial-misconduct claims themselves have merit."); *Willingham v. Mullin*, 296 F.3d 917, 934 n.6 (10th Cir. 2002) (noting that where substantive claims have been rejected on the merits, "separate consideration of the associated ineffective assistance claims is unnecessary"). Davis then sets out a bullet-point list of alleged instances of misconduct and asserts it is clear the prosecutor's comments were improper under this court's decision in *United States v. Anaya*, 727 F.3d 1043, 1059 (10th Cir. 2013) (holding, on direct appeal from a federal criminal conviction and without referencing any Supreme Court precedent, that it

---

[6](...continued)
*Dodd*, 753 F.3d at 990 (citation and quotation omitted).

is impermissible for a prosecutor to appeal to societal alarm or ask the jury to be angry at a defendant).[7] *But see* 28 U.S.C. § 2254(d)(1) (precluding the grant of habeas relief unless the state court decision was contrary to, or an unreasonable application of, Supreme Court precedent); *Parker v. Scott*, 394 F.3d 1302, 1308 (10th Cir. 2005) ("[U]nder § 2254(d)(1), the only federal law we consider is clearly established federal law as determined by decisions, not dicta, of the Supreme Court." (quotations omitted)).  This court need not linger on these problems, however, because the prosecutor's relevant statements did not deprive Davis of a fundamentally fair trial *and* Davis has not demonstrated a reasonable probability that if counsel had objected and the comments had been struck the outcome of the trial would have resulted in a not guilty verdict.  Or, more importantly, Davis has not demonstrated the OCCA's decisions in that regard are so wrong as to be unreasonable under the highly deferential AEDPA standard.

---

[7]Davis's failure to cite even a single relevant authority to support his allegations of misconduct that are not related to appeals to societal alarm means those aspects of his claim are waived.  *See* Fed. R. App. P. 28(a)(9)(A) (requiring that an opening brief contain an argument, with the reasons for the argument, and citations to authorities and the record); *see also Herrera–Castillo v. Holder*, 573 F.3d 1004, 1010 (10th Cir. 2009) (holding that an issue that is not sufficiently raised in an opening brief is waived).  Alternatively, Davis's failure to set forth a reasoned argument as to those other aspects of his claim of misconduct, especially given the extensive analysis set out in the district court order, leaves entirely intact the district court's conclusion that the OCCA reasonably held that each of these alleged instances of misconduct was, in fact, a proper commentary on the evidence presented at trial.

During closing argument, defense counsel stated he intended to minimize his anger but asked the jury to excuse him if he failed to do so. Defense counsel asserted Davis was a "protector" and a "hero" for shooting the person who was breaking into the room where his son was sleeping. In rebuttal, the prosecutor stated the jury's anger should, instead, be directed at Davis and Vaughn.[8]

_____

[8]The prosecutor stated as follows:

> [Defense counsel] started out by saying that he was afraid he was going to get angry. I didn't see him get angry, but I want you guys to be angry. I want you to feel that anger. I want you to feel that anger at all the imaginings that [defense counsel] encouraged you to do.

> Imagine what would happen if [Mustin] hadn't been shot. Imagine what he would have been charged with. Imagine if you know some bad guy. Well, how about this? Imagine if [one of the prosecutors] were on a grassy knoll in Dallas in 1963, what would we charge him with? Imagine if Detective Abel was in Ford's Theater behind Lincoln, what would we charge him with?

> You should be angry that you're encouraged to do those things. Take all those imaginings and toss them out. We're not here to imagine. We're not going to imagine anything. Because a man's life was taken, don't imagine. Don't guess. Pay attention to what happened. That's what I'm asking you to do and get angry.

> Get angry at a man who will hide behind his son. I love my son. That's what [defense counsel] is telling you. He's a protector of his son. Who took him to that apartment with a gun knowing that Ms. Vaughn is drama? He was so protective of his son that he grabs a shotgun, takes his son by the hand and goes to Ms. Vaughn's, and now he wants to stand behind his son and say I'm a protector. Get angry at that.

(continued...)

-18-

"The relevant question is whether the prosecutor['s] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotation omitted). "[I]t is not enough that the prosecutor['s] remarks were undesirable or even universally condemned." *Id.* (quotation omitted). A prosecutor's closing arguments "are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear." *Dodd*, 753 F.3d at 992 (quotation omitted). Moreover, "an improper appeal to societal alarm typically does not amount to a denial of due process." *Duckett v. Mullin*, 306 F.3d 982, 990 (10th Cir. 2002) (alteration and quotation omitted); *accord Brecheen v. Reynolds*, 41 F.3d 1343, 1356 (10th Cir. 1994) ("While improper appeals to societal alarm . . . are unwarranted, they are

---

[8](...continued)

> Ladies and gentlemen, if he wants to be a protector, maybe he should go stay where he feels at home, where he feels safe . . . .
>
> He doesn't grab a shotgun and travel down to where there's drama and then stand here and hold his son like a shield and beg you to forgive him for it. You should be angry at that.
>
> You should be angry at Signolia Vaughn. You should hate Signolia Vaughn. You sat here and listened to her. Every single thing she was asked—I don't remember. I can't think of that. Right?

also not the type of comments that the Supreme Court has suggested might amount to a due process violation." (quotation omitted)).

The prosecutor's statements were made in direct response to Davis's closing argument. *See United States v. Young*, 470 U.S. 1, 12–13 (1985) ("In order to make an appropriate assessment [of a prosecutorial error claim], the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo. . . . [I]f the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction."). Addressing defense counsel's self-described "anger," the prosecutor argued Davis's and Vaughn's actions were the appropriate target of that emotion and more important to the determination of the case. Given their context, the challenged remarks do not present the type of incitement to societal alarm that would cause a trial to be fundamentally unfair. *See Black v. Workman*, 682 F.3d 880, 909 (10th Cir. 2012). Furthermore, the trial court instructed the jurors that their decision should be based solely on the evidence and specifically cautioned that neither the statements nor the arguments of counsel constitute evidence. *See Anaya*, 727 F.3d at 1059 (holding that this court assumes jurors follow the trial court's instructions and denying relief on an appeal-to-societal-alarm misconduct claim on that basis); *see also Darden*, 477 U.S. at 182

-20-

(considering similar trial court instruction in determining whether prosecutor's closing comments rendered trial fundamentally unfair).

Davis has not demonstrated the prosecutor's arguments rendered his trial fundamentally unfair and has not demonstrated trial counsel's failure to object prejudiced him. The district court correctly denied Davis habeas relief on his claim of ineffective assistance of trial counsel.

### 3. Sufficiency of the Evidence

#### a. Clearly Established Law

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979), sets forth the minimum quantum of evidence the Due Process Clause requires to support a criminal conviction: the relevant question is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Importantly, "this inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318–19 (quotation omitted); *see also Herrera v. Collins*, 506 U.S. 390, 402 (1993) ("[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit."). "[W]hen a record allows for conflicting findings, we must presume that the trier of fact resolved any such conflicts in favor of the

-21-

prosecution." *Wingfield v. Massie*, 122 F.3d 1329, 1333 (10th Cir. 1997) (quotation and alterations omitted). This exacting standard recognizes the great deference owed to jury determinations and this court's concomitant duty to uphold such determinations if the evidence, when viewed most favorably to the state, could be interpreted to support the determination.

As should be clear from the above recitation, this standard is difficult to satisfy even on direct appeal. When, however, this court is reviewing a state court's application of the *Jackson* standard, our "task is limited by AEDPA to inquiring whether the OCCA's application of *Jackson* was unreasonable." *Matthews v. Workman*, 577 F.3d 1175, 1183 (10th Cir. 2009). The Supreme Court discussed the "deferential review that *Jackson* and § 2254(d)(1) demand" in *McDaniel v. Brown*, 558 U.S. 120, 132 (2010). *McDaniel* reasoned as follows:

> A federal habeas court can only set aside a state-court decision as an unreasonable application of clearly established Federal law if the state court's application of that law is objectively unreasonable. And *Jackson* requires a reviewing court to review the evidence in the light most favorable to the prosecution. Expressed more fully, this means a reviewing court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.

*Id.* at 132–33 (quotation, citations, and alteration omitted). "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Id.* (quotations and citation omitted).

### b. Background

On direct appeal, Davis asserted his first-degree murder conviction was not supported by sufficient evidence. The OCCA rejected this claim:

[T]he evidence supporting the charge of First Degree Murder came from [Davis's] own admissions to police, corroborated by the physical evidence. The only remaining issue was whether [Davis] acted reasonably in defense of self, others, or property. The jury was properly instructed on these affirmative defenses. Having reviewed the evidence in its entirety, we find it sufficient to support the jury's verdict. *Jackson v. Virginia*, 443 U.S. 307, 319–20 (1979).

*Davis*, No. F-2014-25, at 6. The district court concluded the OCCA's decision was not an unreasonable application of *Jackson*, especially given the doubly deferential standard applicable to such claims when they have been rejected by a state court on the merits. In so doing, the district court also set out the following summary of the evidence adduced at trial:

As referenced in the OCCA's Summary Opinion, there was detailed testimony and evidence at trial as to the events of October 19-20, 2012. [Vaughn] testified that [Davis] agreed to spend the night at her apartment but insisted upon bringing a gun, despite her

-23-

request that he leave it behind. *See* Vol. II Trial Tr. 65; Vol. III Trial Tr. 21-22. [Vaughn] further testified that she woke [Davis] in the middle of the night and told him that someone was trying to get in through the window. *See* Vol. II Trial Tr. 70-71. While [Vaughn] called 911, [Davis] went into the living room and heard noises that sounded like a "scratch scratch" on the window. *See id.* at 71-72, 77; State's Ex. 42 (Doc. No. 15).

Further evidence and testimony reflected that as [Davis] backed up towards the bedroom, he saw a shadow outside the window. [Davis] grabbed his loaded shotgun and went back into the living room. When [Davis] saw the blinds from the window get pushed into the living room from the outside, he aimed the loaded shotgun at the window and fired one shot, killing [Mustin]. *See* Vol. II Trial Tr. 138, 220; Vol. III Trial Tr. 19; State's Ex. 42. After [Davis] shot the victim, he took the shotgun back into [Vaughn's] bedroom, placed it into a bag, and set the bag next to or under the bed. *See* Vol. II Trial Tr. 77, 142–43; Vol. III Trial Tr. 20; State's Exhibit 42. When police officers arrived at her apartment, neither [Vaughn] nor [Davis] told the officers about [Davis's] shotgun or that [Davis] had fired a gun. *See* Vol. II Trial Tr. 74–76. During his interview with a police detective, [Davis] first claimed he was told by [Vaughn] that someone was breaking into the apartment and that when [Davis] entered the living room, he heard a "boom" so he got all of the kids and hid in [Vaughn's] closet until the police arrived. *See* Vol. III Trial Tr. 18, 30; State's Ex. 42. [Davis] then claimed [Vaughn] had woken him up and told him someone was breaking into the apartment, so [Davis] went into the living room and heard a "scratch scratch" and saw a shadow outside the window. [Davis] backed up slowly and heard a "boom." *See* Vol. III Trial Tr. 18; State's Ex. 42. Finally, after the detective informed [Davis] that testing would prove who fired the gun and mentioned self-defense, [Davis] admitted that he had fired the gun and told the detective exactly where the gun was hidden in the apartment. *See* Vol. III Trial Tr. 18–20; State's Ex. 42.

### c. Analysis

The OCCA did not act unreasonably in concluding the evidence adduced at trial was constitutionally sufficient to allow a rational trier of fact to find Davis guilty of first degree murder. *Jackson*, 443 U.S. at 319. Davis argues, however, that the prosecution failed to prove he and Vaughn planned the crime together. This argument is entirely beside the point. Neither motive nor conspiracy are elements of the crime of first degree murder and, as determined by the OCCA in resolving an asserted variance claim on direct appeal, the prosecution was not "required to prove any such agreement or motive to obtain a murder conviction against [Davis]." *Davis*, No. F-2014-25, at 5; *See Jackson*, 443 U.S. at 324 n.16 (noting the *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law").

Davis also claims his initial denial that he was the shooter does not support the jury's guilty verdict as there were "numerous reasons why a person in [his] situation would have denied being involved in the shooting." Pet'r's Opening Br. at 29. Davis is simply incorrect, however, in asserting the jury was obligated to attribute his consciousness of guilt to the possession of the weapon, rather than to Mustin's murder. This court's review under *Jackson* is "sharply limited and a court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the

-25-

trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quotations and citation omitted). The evidence presented at trial, especially when considered in the light most favorable to the prosecution, was sufficient for a rational trier of fact to find Davis guilty of first degree murder beyond a reasonable doubt. Thus, the OCCA's decision to deny Davis relief on this claim on direct appeal is not an unreasonable application of *Jackson*.

### 4. Cumulative Error

In § 2254 proceedings, "the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2013) (quotations omitted). To be clear, "[c]umulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998). As noted above, Davis has only demonstrated the existence of a single error: improper limitation on his ability to cross-examine Vaughn about whether she had been charged with a crime in relation to Davis's death. This court has already concluded the OCCA acted reasonably in determining that lone error was

-26-

harmless beyond a reasonable doubt.  Thus, Davis lacks "two or more actual errors" to accumulate and is not entitled to relief on the basis of a claim of cumulative error.[9]

## IV.  CONCLUSION

For those reasons set out above, the order of the United States District Court for the Western District of Oklahoma denying Davis's § 2254 habeas petition is hereby **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

---

[9]This court has recognized that a circuit split exists regarding "whether the need to conduct a cumulative-error analysis is clearly established federal law under 28 U.S.C. § 2254(d)(1)." *Cole v. Trammell*, 755 F.3d 1142, 1177 n.14 (10th Cir. 2014).  We have indicated, however, that the concept is probably viewed as clearly established in Tenth Circuit precedent.  *Id.*  Given this court's conclusion that Davis has only established the existence of a single error of constitutional magnitude, it is unnecessary to consider that matter further.